Argued September 9, affirmed December 12, 1974, petition for
rehearing denied January 14, 1975

## SCHOOL DISTRICT NO. 12 OF WASCO
COUNTY ET AL, *Appellants, v.*
WASCO COUNTY ET AL, *Respondents,*
DEPARTMENT OF REVENUE, *Intervenor.*

529 P2d 386

Charles A. Phipps and Keith A. Mobley, of Phipps, Dunn & Mobley, The Dalles, argued the cause and filed briefs for appellants School District No. 12, City of The Dalles, Mosier Rural Fire Protection District, Dean M. Wilcox, M. D., Jerry S. Davis, John J. Milne, and Walt Carte.

M. D. Van Valkenburgh, of Heisler & Van Valkenburgh, The Dalles, argued the cause and filed a brief for respondents Wasco County, Oregon School District No. 9 and Wasco Rural Fire Protection District.

Ira W. Jones, Assistant Attorney General, Salem, argued the cause for intervenor. With him on the brief were Lee Johnson, Attorney General, and Theodore W. de Looze, Chief Tax Counsel, Salem.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, and SLOPER, Justices.

HOLMAN, J.

This is a review of a declaratory judgment proceeding to test the constitutionality of the laws of this state which relate to the manner in which ad valorem property tax refunds are paid. The Oregon Tax Court held the laws to be constitutional[1] and plaintiffs appeal.

Martin Marietta Aluminum, Inc., owns a large aluminum manufacturing plant in Wasco County. After protracted litigation with the appropriate gov-

---

[1] 5 OTR 287 (1973).

ernmental authorities, stipulated decrees materially reduced the assessed valuation of the plant for tax purposes for the tax years 1969-70, 1970-71, and 1971-72. These decrees resulted in a refund of taxes previously paid by Martin Marietta for those tax years in the total sum of approximately $320,000.

The legislative enactments relating to the payment of refunds do not require that refunds be paid back by the taxing districts within the county which levied the taxes and used the money, but provide that refunds be paid out of the county general fund,[2] and that that fund be reimbursed from the unsegregated tax collection account.[3] The latter account is made up of the current undistributed property taxes collected by the county on all property within the county.[4] Thus, refunds of taxes levied by taxing districts encompassing less than the entire county are in part paid from funds generated by property within other county taxing districts which have not received any benefit from the overpayments. Plaintiffs are such nonbenefiting taxing districts and taxpayers within those districts. Defendants are other taxing districts within the county or are county officials.

Wasco County does not have a large assessed valuation, and a disproportionate part of it is represented by one taxpayer, Martin Marietta. The refund amounted to about four per cent of all annual levies within the county in the year the refund was paid.

Prior to the passage of the statutes now in effect, the laws required that the overpayments be re-

---

[2] ORS 311.806 (1).
[3] ORS 311.806 (3).
[4] ORS 311.385.

funded by the taxing districts which received the benefit of the overpayments. A letter from the chairman of the then Tax Commission to the then chairman of the Senate Taxation Committee indicates that a change was requested by the Commission because of the large number and relative insignificance of most refunds, because of their tendency in the long run to even out among the various taxing districts, and because of the burdensome and expensive bookkeeping. As is sometimes the case, a situation came along which, because of peculiar circumstances, resulted in a much greater contribution by non-benefiting taxing districts than would be usual.

The present tax refund provisions in the law are part of a broader tax collection and distribution system. For instance, taxes collected for all taxing districts in a county are pooled and divided proportionately among all taxing districts without regard to the particular district in which is situated the property upon which the taxes are paid.[9] Plaintiffs herein do not challenge this procedure, nor do they challenge Martin Marietta's right to a refund or the amount of such a refund. They do challenge, however, the means of implementing the refund as established by ORS 311.806 (3).

Plaintiffs' basic contention is that the challenged statute required them to contribute to refunds of taxes which were not levied or spent for their benefit. Their tax money was taken to pay someone else's refund without proportionate or any benefit to themselves.

---

[9] ORS 311.390 to 311.395.

Plaintiffs allege that ORS 311.806 (3) is unconstitutional for one or more of the following reasons:

1) it violates the equal protection clause of the Fourteenth Amendment of the United States Constitution, and Article I, Section 20, of the Oregon Constitution, in that the statute creates a class of citizens with special privileges and immunities as well as another class which bears special burdens;

2) it takes plaintiffs' property without due process, in violation of the Fourteenth Amendment of the United States Constitution, and of Article I, Section 10, of the Oregon Constitution. Under this claim, plaintiffs apparently argue that the statute violates both the procedural and substantive requirements of due process.

■ It is well established that the legislature has the plenary power to enact laws for all purposes of civil government; any prohibition upon the legislature is the exception rather than the rule and must be expressly provided for in the state or the federal constitution. *Wright v. Blue Mt. Hospital Dist.*, 214 Or 141, 144-45, 328 P2d 314 (1958); Oregon Constitution, Art. IV, § 1 (1).[®] Thus, the only issue before this court is whether the questioned statute offends the mandates of the constitutions of either Oregon or the United States.

*EQUAL PROTECTION*

■ Plaintiffs correctly state that Article I, Section

---

[®] "Section 1. Legislative power; initiative and referendum. (1) The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives."

20,[7] of the Oregon Constitution proscribes any grant of special privileges or immunities to a class of citizens legally indistinguishable from all others so situated; whereas Section 1 of the Fourteenth Amendment of the United States Constitution[8] proscribes the denial of the rights of a disfavored minority.[9] However, this court has stated that such semantic and conceptual differences which may exist between the Fourteenth Amendment and Article I, Section 20, can be resolved in favor of common underlying principles. In *Plummer v. Donald M. Drake Co.*, 212 Or 430, 437, 320 P2d 245 (1958), the court said:

> "The controlling principles which guide the courts in determining questions of alleged unconstitutional discrimination or class legislation are the same whether it is the equal protection clause of the Fourteenth Amendment of the Constitution of the United States which is invoked, or the privileges and immunities provision in Art. I, § 20 of the Oregon Constitution. Fundamentally, classification is a matter committed to the discretion of the legislature and the courts will not interfere with the legislative judgment unless it is palpably arbitrary * * *."

*Also see, Nilsen v. Davidson Industries, Inc. et al*, 226 Or 164, 169, 360 P2d 307 (1961).

It is contended by plaintiffs that ORS 311.806 (3) creates classes of citizens which cannot be supported by any real or substantial distinction capable of with-

[7] "Section 20. Equality of privileges and immunities of citizens. No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens.—"

[8] "AMENDMENT XIV. Section 1. * * * No State shall make or enforce any law which shall * * * deny to any person within its jurisdiction the equal protection of the laws."

[9] Linde, *Without "Due Process"—Unconstitutional Law in Oregon*, 49 Or L Rev 125, 141-43 (1970).

standing constitutional scrutiny. They assert that the legal and practical result of a refund under the statute is the creation of a class of citizens the members of which are favored at the expense and burden of other citizens who are legally indistinguishable. Plaintiffs claim that the non-levying taxing districts and taxpayers residing therein must bear the burden of contributing to the refund without the privilege of enjoying any benefits from the original levy; and, therefore, such a classification scheme unreasonably discriminates against plaintiffs.

■ The sole constitutional criterion which ORS 311.-806 (3) must meet requires that the classifications created bear some rational relationship to a legitimate state interest sought to be advanced by the statutory scheme. It is immaterial that available alternatives may be better suited to carry out the rationale underlying the statute. This court stated in *Nilsen v. Davidson Industries, Inc. et al, supra* at 169:

> "Classification is primarily a legislative problem and the courts have no authority to interfere with the legislative determination as long as it is based upon some real and substantial distinction having *a* just relation to the object in view. *Mallinckrodt Works v. St. Louis,* 238 US 41, 55, 59 LE 1192, 35 SC 671 * * *." (Emphasis ours.)

The court went on to say:

> "* * * In *Mallatt v. Luihn et al,* 206 Or 678, 702, 294 P2d 871, we said that '* * * a classification having some reasonable basis does not offend against the Federal Constitution or the Constitution of this state merely because it is not made with mathematical nicety or because in practice it results in some inequality.' * * *." 226 Or at 169.

■ There is no question concerning a rational relationship between the classifications and a legitimate

state interest. The doing away with expensive and time-consuming bookkeeping and the mitigation of the shock to a few tax levying agencies in situations where a large refund is involved are legitimate state interests which bear a logical relation to the legislatively created classifications. Either one or both of these reasons are adequate to foreclose claims of special favors or of inequality of treatment of constitutional consequence.

■ Plaintiffs in effect contend that since the statute results in an unequal distribution of burdens and privileges, they have been denied equal protection of the law. However, plaintiffs cannot base their claim of unequal protection solely upon a showing of inequitable results. The issue is whether the statute applies a wholly irrational classification scheme, not whether the provision harbors inequities. A mere showing of discriminatory treatment is insufficient to establish an injury of constitutional proportion.

In addition, on an over-all view, there is no basis for a claim of disparate treatment. All refunds are paid from pooled tax money of all taxing districts in the county. Although plaintiffs' money was taken to pay a refund of taxes of which defendants received the benefit, defendants' money will be taken to pay any refunds of taxes of which plaintiffs received the benefit.

■ Plaintiffs also appear to be asserting that the constitutionality of ORS 311.806 (3) should be determined under the "compelling governmental interest" test which is required for the curtailment of a "fundamental right," *e.g., Shapiro v. Thompson,* 394 US 618, 89 S Ct 1322, 22 L Ed 2d 600 (1969) (free movement be-

tween states), or that the alleged classification involved here is somehow "inherently suspect" and can therefore be justified only by an "overriding statutory purpose," *e.g., Loving v. Virginia,* 388 US 1, 87 S Ct 1817, 18 L Ed 2d 1010 (1967) (classification based upon race). Plaintiffs fail to demonstrate how and in what manner a tax refund provision affects individual "fundamental interests" or creates an "inherently suspect" classification. The interest and classifications are unquestionably economic in nature and character and as such do not rise to the required level of constitutional importance.

Plaintiffs contend that the obligations of the tax levying districts within which the Martin Marietta plant is located to repay the refund are being partially transferred to other tax levying districts within the county and that such a result has been held to be constitutionally impermissible by the case of *Simon v. Northup,* 27 Or 487, 40 P 560, 30 LRA 171 (1895). In *Simon* it was held that the legislature could not constitutionally require Multnomah County to pay off an established bonded indebtedness previously incurred by the city of Portland to build a bridge and to purchase a ferry. The fallacy in plaintiffs' contention is the assumption that payment of the refund is the established obligation of the tax levying districts which levied the tax represented by the refund. Such is only the case if the legislature lacks the power to establish the refund as a collective obligation of every tax levying district in the county. The legislature does have such authority as long as a legitimate governmental interest is served and unconstitutional discrimination is thereby avoided. We have already demonstrated there is no such discrimination.

## DUE PROCESS

Plaintiffs advance Article I, Section 10,[10] of the Oregon Constitution as a due process provision. Professor Linde[11] demonstrates that this section is not a due process provision, but, rather, has to do with the protection of legal remedies which assert interests recognized in tort law.[12] This court has not always agreed with him;[13] however, it is unnecessary in this case to fight this battle because when this court has treated Article I, Section 10, as a due process clause, it has shown no inclination to treat it substantially different from the federal interpretation of the Fourteenth Amendment.

■ Plaintiffs claim they were not afforded procedural due process because they were given no notice, hearing, or opportunity to object concerning the contribution of their tax money to the refund. At the time the budget of each tax levying district is considered, an opportunity is afforded to appear and to be heard. At that time the statutes give constructive notice that budgeted funds are subject to the payment of refunds of taxes levied by any taxing district within the county. If a due process question exists it is not one of procedural due process but rather one regarding whether the legislature has the power to direct that

---

[10] "Section 10. Administration of justice. No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation.—"

[11] Hans A. Linde, Professor of Law, University of Oregon.

[12] Linde, *Without "Due Process"—Unconstitutional Law in Oregon,* 49 Or L Rev 125, 145-46 (1970).

[13] Bonney v. OSP, 270 Or 79, 526 P2d 1020 (1974); City of Portland v. James, 251 Or 8, 10, 444 P2d 554 (1968); State v. Bouse, 199 Or 676, 686, 264 P2d 800 (1953).

plaintiffs' property be taxed for refunds of taxes levied and spent by other districts.

■■ Substantive due process is explained in terms of the power of the state to tax. Mr. Justice Frankfurter, in *Wisconsin v. J. C. Penney Co.*, 311 US 435, 61 S Ct 246, 85 L Ed 267 (1940), said as follows:

> "* * * A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society. * * *.

> "* * * That test [whether the state has the power] is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. * * *." 311 US at 444.

The State of Oregon has afforded plaintiffs' property the protection and services of its government and it, therefore, has the power to tax plaintiffs' property. Plaintiffs' real argument is not one of no power to tax but one of discrimination because taxes are levied on them for someone else's benefit, a not unusual situation. The discrimination question has already been disposed of under plaintiffs' equal protection argument.

■ In addition to the constitutional provisions previously mentioned in this opinion, plaintiffs have urged

upon us the provisions of Article I, Sections 18 and 32, and Article IX, Sections 1 and 3, of the Oregon Constitution. It appears to us that the assertions of these provisions are merely other approaches to, or a restatement of, plaintiffs' primary claims of lack of equal protection and due process and are make-weight arguments which in no way alter plaintiffs' basic contentions. Therefore, we have not given such provisions more detailed mention in this opinion.

The decree of the trial court is affirmed and all funds, the disbursal of which has heretofore been restrained, are hereby released. Costs to neither party.

---

"Section 18. Private property or services taken for public use. Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; * * *."

"Section 32. Taxes and duties; uniformity of taxation. * * * [A]ll taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

"Section 1. Assessment and taxation; uniform rules; uniformity of operation of laws. The Legislative Assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the State."

"Section 3. Laws imposing taxes; gasoline and motor vehicle taxes. No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied. * * *."