Argued and submitted May 11, affirmed July 8, reconsideration denied September 4, petition for review denied October 6, 1987 (304 Or 240)

## CLACKAMAS COUNTY EDUCATION SERVICE DISTRICT,
*Respondent,*

*v.*

## CLACKAMAS COUNTY et al,
*Appellants.*

(85-3-371; CA A41246)

739 P2d 587

Michael E. Judd, Chief Assistant County Counsel, Oregon

City, argued the cause for Appellants. With him on the briefs was Clackamas County Counsel, Oregon City.

John C. Caldwell, Oregon City, argued the cause for respondent. With him on the brief was Hibbard, Caldwell, Bowerman, Schultz & Hergert, Oregon City.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The question in this class action is whether plaintiffs, local governments with territory in Clackamas County,[1] are entitled to share in the interest earned from the county's investment of property tax receipts which were deposited in the county treasurer's unsegregated tax collections account (unsegregated account) pursuant to ORS 311.385 between July 1, 1984, and September 19, 1985. The trial court answered the question affirmatively and entered judgment for plaintiffs. Defendants appeal, and we affirm.

The analysis turns in the main on four statutes. ORS 294.080(3) provides:

> "Interest earned by investment of any moneys received by the county treasurer from any source, which moneys have been designated for a particular municipal corporation as defined in ORS 294.311(19), shall be credited to the account of the particular municipal corporation and not to any county fund."[2]

At the material time, ORS 311.385, ORS 311.390(1) and ORS 311.395 provided, respectively:[3]

> "The taxes collected by the tax collector pursuant to this chapter shall be deposited daily with the county treasurer who shall deposit it to an account in his records designated unsegregated tax collections. The tax collector shall take a receipt therefor." ORS 311.385.

> "When the tax collector receives the assessor's certificate pursuant to ORS 311.115, the tax collector shall prepare and file with the county treasurer a percentage schedule of the ratio of taxes and other amounts to be collected after deducting offsets and adding gain caused by rounding, the amounts computed in accordance with ORS 311.105(1)(d) for each governmental unit as shown in such certificate, compared to the total of such amounts. * * * The ratios computed pursuant to this section for a given fiscal year shall be used for the distribution of all taxes levied and collected for that fiscal year regardless of the actual date of receipt." ORS 311.390(1).

---

[1] The county's assessor and tax collector and its treasurer, as well as the county itself, are named as defendants.

[2] Plaintiffs are "municipal corporations" as defined in ORS 294.311(19).

[3] The sections were subsequently amended by Or Laws 1985, ch 162, §§ 1, 2 and 3.

"(1)   The tax collector, on or before the fifth business day of each month, shall make a statement in triplicate of the exact amounts of cash and of warrants collected during the preceding month for taxes, penalties and interest, and the total amount of the statement shall be credited to the several funds for which they were respectively collected in accordance with the schedule provided in ORS 311.390. One of the statements shall be filed with the county clerk, one with the county treasurer and the other retained on file in the office of the tax collector.

"(2)   The statements may be made more often and for shorter periods if the tax collector so desires but one of the statements so filed shall cover a period coinciding with the last business day of the particular calendar month.

"(3)   Notwithstanding subsections (1) and (2) of this section, for the period beginning October 15 and ending December 31, the tax collector shall prepare the statements provided by subsection (1) of this section relating to current year tax collections weekly rather than monthly.

"(4)   The county treasurer shall keep the moneys and warrants received by him from the tax collector in their respective funds and shall pay such moneys and warrants over to the several taxing units respectively entitled thereto upon demand and take receipts therefor." ORS 311.395.

The dispute between the parties turns on whether ORS 294.080(3) applies to tax moneys while they are held in the unsegregated account. Plaintiffs rely and the trial court relied on the tax court's decision in *School Dist. No. 1 v. Multnomah County,* 9 OTR 371 (1983), which involved the same issue and held that ORS 294.080(3) was applicable.

■   Before we turn to that issue, however, we must address the jurisdictional question of whether the circuit court had and we have jurisdiction of this case. The parties do not overtly raise the jurisdictional issue. However, defendants note:

"[I]n a companion action between these same parties in Tax Court, that court dismissed the plaintiff's claim for interest pursuant to ORS 294.080(3). The basis of that dismissal was that the Tax Court lacked jurisdiction because ORS 294.080 is *not a tax law (the jurisdictional issue was not raised in School Dist. No. 1 [v. Multnomah County], supra).* In fact, before the *School Dist. No. 1* case, the Tax Court does not appear to have dealt with that statute in any of its reported opinions. The

Tax Court had no experience or expertise in dealing with the ORS 294.080 issue, and was out of its element in making that portion of the *School Dist. No. 1* decision. This court should afford it no precedential value."

In ruling on defendants' motion to dismiss the Tax Court proceeding, that court concluded that the proceeding did not arise "under the tax laws of this state," ORS 305.410, because ORS 294.080(3) relates to public financial administration rather than taxation. The court stated that "ORS 311.395 and ORS 294.080 are somewhat related from a money handling point of view, but the one is a tax law and the other is not." It concluded that "defendants' liability for interest earned on the investments under ORS 294.080 arises from facts which are different and separate than those which would support a claim for damages under ORS 311.345." *See Sanok v. Grimes,* 294 Or 684, 662 P2d 693 (1983).

The question could be viewed from the opposite direction: ORS 294.080(3) comes into play here only if ORS 311.385 to 311.395, which are tax laws, have the effect of designating moneys in the unsegregated account for particular municipal corporations. On balance, however, we agree with the Tax Court's conclusion that the controversy comes within the circuit court's jurisdiction rather than its own. It follows, as defendants indicate, that the Tax Court also had no jurisdiction over the same question in *School Dist. No. 1 v. Multnomah County, supra.* It does not follow, however, that the able *reasoning* in the court's opinion in that case must be disregarded. Everyone agrees that its opinion does not bind us. We have considered that opinion, like the parties' arguments and the other authority they cite and we find, for whatever guidance we think it lends.

■ We turn to the merits. Plaintiffs argue that moneys deposited to the unsegregated account are designated for particular municipal corporations and are therefore subject to ORS 294.080(3). Defendants argue that moneys in the unsegregated account are not designated for particular local governments and that designation does not occur until the distribution procedures of ORS 311.395 are completed. Until that time, defendants maintain, the interest earned on property tax receipts may be credited to the county general fund, rather than to the various taxing localities. *See* ORS 294.080(1).

Defendants contend that to read ORS 294.080(3) as applying to moneys in the unsegregated account is to understand the word "designated" in the statute as being synonymous with "destined." Although the money in the account can only be held for eventual distribution to the various taxing districts in the county, defendants reason that

"it is hard to imagine what could be more clearly *not* designated than what the Legislature has itself called the *'unsegregated* tax collections account'. If the tax collections are ever 'designated', that could not be until the tax collector prepares the monthly (weekly) distribution statement pursuant to ORS 311.395. Until that point, there has not even been a determination as to how much each district will receive, much less any 'designation'." (Emphasis defendants'.)

We do not agree with defendants' understanding that the taxing bodies' proportionate entitlement to distributions from the unsegregated account are unknown or unknowable at the time when moneys are deposited into the account. ORS 311.390(1) provided, in part:

"The ratios computed pursuant to this section for a given fiscal year shall be used for the distribution of all taxes levied and collected for that fiscal year regardless of the actual date of receipt."

The assessor's delivery of the tax roll to the tax collector must occur by October 15. ORS 311.115. Taxes become due on November 15. ORS 311.250. Consequently, the distribution ratios can be calculated pursuant to ORS 311.390 before the taxes to be deposited in the unsegregated account are received.[4] ORS 311.395, in turn, provides that the tax collector's statement shall credit the taxes included on it "to the several funds for which they *were* respectively collected in accordance with [the ORS 311.390 schedule]." (Emphasis supplied.) Contrary to defendants' understanding, the preparation of the statement pursuant to ORS 311.395 is not the action which designates moneys to the various taxing bodies;

---

[4] The fact that taxpayers may make payments before November 15 does not alter our reasoning. The statutory scheme is clearly designed to establish a sequential process in which the delivery of the tax roll and the assessor's certificate, *see* ORS 311.105, which makes the preparation of the ORS 311.390 schedule possible, precedes the receipt of taxes. Moreover, ORS 311.370 contains mechanisms by which prepayments can be assimilated into the ORS 311.385 to 311.395 process.

it is instead an action which memorializes a designation which has already occurred.

Defendants state that plaintiffs' reliance on ORS 311.390 is misplaced, because "[t]he ORS 311.390 distribution schedule * * * is different for each tax year and a determination must be made [as] to which year or years tax payments apply." Although that statement is correct, the determination which must be made is hardly mind-boggling. It simply requires the completion of an equation in which all the factors are known. More fundamental than the fact that it is mechanically possible to identify each taxing bodies' share of the tax receipts as of the time they are deposited into the unsegregated account is that there is no necessity that the identification occur at that stage in order for interest to be calculated and included in the counties' payments to the bodies at the time of distribution. Defendants dwell on the word "unsegregated" in ORS 311.385 and appear to regard it as the antithesis of the words "designated for a particular municipal corporation" in ORS 294.080(3). However, the more important aspect of ORS 311.385 is that it plainly requires the county treasurer to hold tax receipts in a particular account, pending distribution, rather than in any county fund.

█       Even if defendants' understanding of the mechanics of identifying tax receipts to taxing bodies were correct, the unsegregated account would nevertheless be a pool of moneys held for the benefit of all of the governmental units in a county's territory and not for the county's benefit alone. *See* ORS 294.080(1); *Lane County v. Paulus,* 57 Or App 297, 644 P2d 616, *rev den* 293 Or 456 (1982). The time of ascertainment of a given taxing body's share of the pool is somewhat beside the point; *all* of the taxing bodies are particular beneficiaries of the unsegregated account.

Defendants state:

"Even assuming for sake of argument that the money in the unsegregated account has somehow been 'designated', it has obviously not been designated for 'a particular municipal corporation'. The [tax] court's answer to this problem with its analysis is to invoke a rule of statutory construction that 'the singular number may include the plural . . .' (ORS 174.110(1)). [*School Dist. No. 1 v. Multnomah County, supra,*

9 OTR at 377.] An obvious flaw in this approach, not discussed by the court, is the presence of the word 'particular'; there could hardly be a clearer indication that the Legislature intended that 'municipal corporation' *not* be pluralized." (Emphasis defendants'.)

With or without the rule of construction which the tax court employed, there is little to be said for defendants' argument. There is no linguistic or logical reason why the words "a particular municipal corporation" cannot refer to as many particular municipal corporations as happen to be involved. That is borne out by the legislative history of ORS 294.080(3) which defendants present. They state that the statute was adopted by Oregon Laws 1979, chapter 762, section 8, in response to county treasurers' holding timber severance tax revenue, *see* ORS 321.257 *et seq,* "for extended periods of time before passing it on to the individual districts for whom it had been designated." It seems apparent that the legislature did not intend, by using the words "a particular municipal corporation," that the treasurer's obligations under the statute would arise only if he had failed to pay one municipal corporation the money due it, but not if he had failed to make required payments to many municipalities.

The point which defendants seek to make through their legislative history argument is that ORS 294.080(3) was intended to rectify only the severance tax retention problem and was not meant to apply to any other funds held by the county treasurer for other taxing bodies. The Tax Court said, in response to the same argument in *School Dist. No. 1 v. Multnomah County, supra,* 9 OTR at 375, that "the legislature did not limit the measure to [timber severance tax] payments." We agree that the language of the statute is not compatible with the limited application that defendants would give it. The trial court correctly held that plaintiffs are entitled to the interest that it awarded them.

Affirmed.