Argued and submitted December 4, 1987, affirmed April 6, reconsideration denied
June 10, petition for review denied June 28, 1988 (306 Or 155)

## JACKSON COUNTY,
*Respondent,*

*v.*

## JACKSON EDUCATION
## SERVICE DISTRICT et al,
*Appellants.*

### (85-4169-J-1; CA A42801)

752 P2d 1224

Sandra Sawyer, Medford, argued the cause for appellants. With her on the briefs were Robert H. Grant and Grant, Ferguson, Carter, P.C., Medford.

Ervin B. Hogan and E. Roy Bashaw, County Counsel, Medford, argued the cause for respondent. With them on the brief was Wendie Kellington, Assistant County Counsel, Medford.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

In December, 1983, the Oregon Tax Court decided in *Portland School District No. 1 v. Multnomah Co. et al,* 9 OTR 362 (1983), that, under ORS 294.080(3),[1] interest earned on the unsegregated tax account of a county belongs to the several taxing districts within the county for whom the funds had been designated. That decision raised the possibility that counties could be liable for interest and penalties from 1979 to 1984. As a result, various counties and taxing districts entered into settlement agreements. One agreement was in February, 1985, between the parties here. It provided that the claims of the parties would be compromised by payment by Jackson County (county) in an amount equal to the interest accrued on the unsegregated tax account attributable to the 1982-85 taxes, in three annual installments. The interest on that account would be kept current for all times subsequent thereto. The agreement further provided, in part:

> "[I]f the 1985 legislature enacts legislation which limits the county's liability for interest accrued and accruing on its unsegregated tax account and the same is adjudicated to be valid by a court of competent jurisdiction in a proceeding instituted by any party hereto within 120 days of the effective date of such legislation, the districts will repay the County the money paid under this agreement in excess of the amount so limited * * *."

County paid all of the 1983-84 interest and one-third of the amount for 1982-83. The 1985 legislature then passed legislation which limited the liability of counties to interest which accrued after March 23, 1984. The legislation excluded most of the 1983-84 and all of the 1982-83 amounts covered by the parties' agreement. County then brought this declaratory judgment action, seeking return of $185,000 it had paid to defendants. Defendants appeal a judgment for county. We affirm.

■ Defendants first argue that the circuit court did not have jurisdiction to consider the validity of the legislation.

---

[1] ORS 294.080(3) provides:

"Interest earned by investment of any moneys received by the county treasurer from any source, which moneys have been designated for a particular municipal corporation as defined in ORS 294.311(19), shall be credited to the account of the particular municipal corporation and not to any county fund."

Oregon Laws 1985, chapter 162, sections 12 and 13,[2] provide, in part:

> "Sec. 12. (1) Notwithstanding any other provision of law, a county shall not be liable to any taxing district for interest earned before March 23, 1984, on tax moneys and the unsegregated tax collections account.
>
> "* * * * *
>
> "Sec. 13. Nothing in this act changes any agreement made by any county and taxing district before the effective date of this act, except to the extent contemplated by the terms of such an agreement."

Defendants' position is that sections 12 and 13 are taxing statutes, because their source was House Bill 2299 (1985), the caption of which described the bill as "relating to taxation * * *." Therefore, defendants argue, exclusive jurisdiction is in the Oregon Tax Court. ORS 305.410.

We answered defendants' argument in *Clackamas Co. Ed. Serv. Dist. v. Clackamas Co.,* 86 Or App 259, 739 P2d 587, *rev den* 304 Or 240 (1987). The issue was whether the local government plaintiffs were entitled by ORS 294.080(3) to share in the interest earned from Clackamas County's investment of property tax receipts deposited in the county treasurer's unsegregated account. We concluded that ORS 294.080(3) is a public financial administration statute. Even though the statute comes into play in relationship with taxing statutes, the Tax Court has exclusive jurisdiction over taxing statutes only and therefore did not have jurisdiction to entertain a claim arising under ORS 294.080(3). 86 Or App at 263; *see also Sanok v. Grimes,* 294 Or 684, 662 P2d 693 (1983). It follows here that sections 12 and 13, which relate to claims arising from ORS 294.080(3), are not subject to Tax Court jurisdiction.

County's complaint was filed in December, 1985. Defendants answered and then filed an amended answer on May 22, 1986. Trial was set for June 11. Defendants moved to postpone the trial, and it was reset for August 5. On July 3,

---

[2] The sections have not been codified. Section 12 was included as a note to ORS 311.395 (1985). The sections are not included in the 1987 codification.

defendants moved to file a second amended answer and counterclaims to allege fraud and breach of the contractual covenant of good faith. Defendants asserted that discovery had disclosed those theories and affirmative defenses. County opposed the motion, arguing that to allow it would require a second trial postponement and that the new matter did not present colorable claims or defenses. The trial court heard oral argument and refused to allow the filing of the second amended answer. Defendants assign that ruling as error, arguing that the trial judge considered the merits of the claim instead of only the permissibility of filing.

A pleading may be amended once as a matter of right; leave to amend thereafter is within the discretion of the trial court, which we will reverse only for an abuse of discretion. ORCP 23A; *Jackson v. Mult. Co.,* 76 Or App 540, 544, 709 P2d 1153 (1985). In making that discretionary determination, a trial judge is not precluded from evaluating whether a party has presented a colorable claim. The trial court's discretion in determining when justice requires amendment of pleadings is broad. *Contractors, Inc. v. Form-Eze Systems, Inc.,* 68 Or App 124, 129, 681 P2d 148, *rev den* 297 Or 824 (1984).

As an affirmative defense and counterclaim, defendants alleged that county committed fraud, because it knew (1) that an interim committee of the legislature was preparing legislation and (2) that the Association of Oregon Counties was predicting that such legislation would be passed. Defendants' first allegation states facts which were public knowledge and the second recites what amounts to a speculation by a third party. Neither allegation recites facts which, if proved, would show that county concealed a material fact which would support a finding of fraud. *See Musgrave et ux v. Lucas et ux,* 193 Or 401, 410, 238 P2d 780 (1951).

As another affirmative defense and counterclaim defendants alleged that county breached the implied contractual covenant of good faith, because county knew about the proposed legislation and the likelihood that the legislation would be passed. Defendants claim that the failure to disclose that knowledge induced them to enter the agreement. Those allegations do not support the theory of breach of a covenant of good faith, which goes to the *performance* of the contract, not to the making of it. *See Perkins v. Standard Oil Co.,* 235 Or

7, 16, 383 P2d 107, 383 P2d 1002 (1963); *Wyss v. Inskeep,* 73 Or App 661, 668 n 7, 699 P2d 1161, *rev den* 300 Or 64 (1985).

The allegations of the second amended answer did not constitute colorable claims. Its filing might have required a second trial postponement. The trial court did not abuse its discretion in denying defendants' motion.

■ We also find no error in the court's striking of defendants' claim of mistake at the time of trial. Defendants alleged:

"The settlement agreement entered into by plaintiff and defendants is ambiguous and neither the contract nor the parties contemplated that the 1985 legislature would, or could, prohibit defendants from collecting interest which vested in them and legally belongs to them."

Defendants argue that they were entitled to prove that they did not know that there was a bill pending in the legislature which would limit the counties' liability, that county did know and failed to disclose that the legislation would pass and that "such a material nondisclosure had a material affect [*sic*] on [defendants'] entering the contract." County contends that the "alleged mistake" is not one which may form the basis for relief from enforcement of the contract and that the contract allocated the risk of any mistake to defendants.[3]

■ We agree with county. On its face, the contract unambiguously shows that the parties contemplated the possibility of legislation and contracted to meet that risk. Additionally, in order to avoid a contract on account of a unilateral mistake, the mistake must be a misapprehension as to a *fact* which is material to the agreement. *Gardner v. Meiling,* 280 Or 665, 674, 572 P2d 1012 (1977). At the time of the making of the contract, the legislation was not a fact; it was only a possibility. Even if county strongly believed that the legislation would pass and defendants were uninformed that such legislation had been proposed, the final resolution of the issue was beyond the control of any of the parties. Each side might

---

[3] Defendants did not ask for rescission of the contract, the remedy for mistake, and tender a refund. Rather defendants argued that the contract is "severable" and that the return of the payments can be excised without disturbing the remainder of the contract. We do not agree. Although the rest of the contract might not be "disturbed" from the point of view of readability, removal of the provision would certainly disturb the bargained for exchange of benefits and burdens between the parties.

fervently have hoped that legislation would or would not result, but that hope is not a *fact* upon which a contract may be found to be invalid.

As noted, in part, in *Restatement (Second) Contracts* § 151, *comment a* at 383 (1981):

"The word 'mistake' is not used as it is sometimes used in common speech, to refer to an improvident act, including the making of a contract, that is the result of such an erroneous belief. This usage is avoided here for the sake of clarity and consistency. Furthermore, the erroneous belief must relate to the *facts as they exist at the time of the making of the contract.* A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as that word is defined here." (Emphasis supplied.)

If defendants were "mistaken" in their belief that no legislation would be passed, that "mistake" was an erroneous judgment as to a future event, not a "mistake of fact" going to the basis of the agreement.

Defendants' final assignment is that the trial court erred in holding that Oregon Laws 1985, chapter 162, sections 12 and 13, are constitutional. Defendants begin their argument from the premise that, after the amendment to ORS 294.080 in 1979 and the decision in *Portland School District No. 1 v. Multnomah Co. et al, supra,* the right of defendants to the interest earned on the unsegregated tax account became a "vested" right and is subject to the same constitutional protections afforded to vested private property rights.[4] Therefore, they argue, the legislature could not alter those rights retroactively.

Defendants cite no specific federal or state constitutional provision in support of their argument but apparently rely on the Due Process Clause of the Fourteenth Amendment and Article I, sections 10 and 20, of the Oregon Constitution. If defendants had any right to interest on unsegregated funds before the 1985 amendment, that right was subject to legislative control. Neither the federal nor the state constitution

---

[4] Defendants are not correct that we held in *Clackamas Co. Ed. Serv. Dist. v. Clackamas Co.,* 86 Or App 259, 739 P2d 587, *rev den* 304 Or 240 (1987), that ORS 294.080(3) creates vested rights. There the issue was whether the plaintiffs were entitled to share in the interest earned in the unsegregated accounts, not whether the interest was vested.

affords the same protection from retroactive legislation to rights of subdivisions of the state as to rights of private persons.

In *Hodges v. Snyder,* 261 US 600, 43 S Ct 435, 67 L Ed 819 (1922), the taxpayers challenged a curative act of the South Dakota legislature which was enacted after the taxpayers had obtained a judgment invalidating a school consolidation. They argued that the act deprived them, without due process, of rights vested by the earlier judgment. The Supreme Court held that the rights were public. Private rights vested by a judgment cannot be retroactively taken away, but the same does not apply to public rights, which can be annulled by legislation.

The Oregon Supreme Court has also rejected the argument that public property rights are "vested" rights. In *Miller v. Henry,* 62 Or 4, 7, 124 P 197 (1912), the Supreme Court noted:

> "A county is a subdivision of the State, created by the legislature for administrative purposes, and except as limited by the constitution is subject at all times to legislative control. No citizen has any vested right in its revenues. These may be changed or diverted from one public use to another by legislative authority, and no citizen can complain that his contract rights are thereby impaired."

In *School District No. 48 v. School District No. 115,* 60 Or 38, 118 P 169 (1911), a board of arbitration divided the assets and liabilities of the school districts. The court rejected a substantive due process challenge under Article I, section 10, of the Oregon constitution, noting that the school districts, as agencies of the state, had no vested right to property which they had acquired in trust for the general public. That property is subject to an exercise of the legislative will and the courts are without power to interfere.

In *School Dist. No. 12 v. Wasco County,* 270 Or 622, 529 P2d 386 (1974), the Supreme Court specifically rejected a challenge to a taxing statute as a violation of Article I, section 10, of the Oregon Constitution. The statute allowed the refund of overpayments from general county funds instead of only from funds of the districts which had received the excessive taxes. The plaintiffs argued that, because they had not benefitted from the overpayment of taxes in other districts, they

should not have to contribute to the refund of those overpayments through the general fund. In other words, they asserted that the legislature could not prescribe the use of property which had been acquired by, or "vested" in, one governmental subdivision for the use of another. The Supreme Court rejected the argument, noting that the legislature has plenary power to enact laws for all purposes of civil government. 270 Or at 627. The "retroactive" diversion of public property did not violate constitutional prohibitions against the taking of property without due process.[5]

Defendants also argue that the legislation unconstitutionally creates an arbitrary classification without relationship to the purpose of the act in violation of the Fourteenth Amendment and Article I, section 20, of the Oregon Constitution.[6] *See School Dist. No. 12 v. Wasco County, supra,* 270 Or at 631. They reason that section 12 treats every county in the state in the same manner, but that, by enacting section 13, which provides that the act would not change agreements which had been entered into before the effective date of the act, the legislature created an impermissible classification between the counties and taxing districts which had agreements and those which did not. They contend that, as a consequence, the act robs certain taxing districts of their rights to interest while allowing others to collect at least portions of the interest. Defendants argue that to allow some, but not all, counties to collect interest does not bear a rational relationship to the purpose of the act to afford relief to the counties from the financial problems which could result from being required to pay over the earned interest.

Legislation which creates classifications with inequitable results is not unconstitutional if the distinctions have a rational basis. *See Hukaba v. Johnson,* 281 Or 23, 26, 573 P2d 305 (1978). Here the legislative history of the act shows that financial problems of the counties was only one of the concerns addressed by the legislation. There was also confusion and uncertainty as to the duty of counties to pay over

---

[5] Defendants' reliance on *Fisk v. Leith,* 137 Or 459, 299 P 1013, 3 P2d 535 (1931), to show that public property rights cannot be retroactively divested is misplaced. The parties in *Fisk* were individuals and their public utility corporations. They were not governments.

[6] Defendants assert that the Oregon protection is broader than the federal but not that the analysis is different.

interest from prior years and also as to the duties of officers of taxing districts to pursue claims against the counties. The act thus sought not only to limit the liability of counties but also to avoid litigation.

One area of potential litigation was what effect the act would have on existing contracts which had been made in response to *Portland School Dist. No. 1 v. Multnomah County, supra.* Litigation arising from those agreements could have included the issue of whether the act would violate constitutional prohibitions against the impairment of contracts.[7] Section 13 reflects legislative awareness of possible conflicts between the act and constitutional rights to contract and that the legislature intended that the act resolve those conflicts without litigation. That purpose is a rational basis for creating distinctions among the counties and among taxing districts.[8]

■ Defendants' final constitutional argument is that section 13 violates Article IV, section 23, of the Oregon Constitution, which prohibits the adoption of any special or local law "in relation to interest on money." Defendants contend that the legislation is special, because section 13 creates a closed class which can never be open since it is comprised of the counties and taxing districts which entered into agreements *before* the effective date of the act. They rely on *State ex rel v. Swigert,* 59 Or 132, 116 P 440 (1911), and *Tichner v. Portland et al,* 101 Or 294, 200 P 466 (1921). In both, legislation based on population was challenged. In *Swigert,* the legislation provided for the appointment of commissioners of any port which contained within its boundaries a population of more than 100,000 under the federal census made before the act. The act thus applied only to Portland and excluded other cities which might attain the requisite population. The court held that the act was special legislation. In *Tichner* the court did not find an act which applied only to one county to be

---

[7] US Const, Art I, § 10; Or Const, Art I, § 21.

[8] Defendants also claim that the language of section 13, "except to the extent contemplated by the terms of such an agreement," was directed specifically at the Jackson County agreement and created an unconstitutional subclass. Section 13 applies to all existing agreements. That would include those in which the parties anticipated legislation and contracted concerning the consequences of any legislation. The language does not create an unconstitutional subclass, even if Jackson County was in fact the only county eventually covered by its terms.

special legislation, because it allowed counties which might attain a population of 100,000 in the future to enter the class.

Legislation which applies only to particular individuals or things is special legislation. *Evert v. Oregon & Western Colonization Co.,* 123 Or 225, 261 P 443 (1927). The test does not depend upon the number of people or things within the scope of the law or whether it is equally applicable to all parts of the state. Rather, the test is whether the classification bears a rational relationship to the purpose of the act. *Evert v. Oregon & Western Colonization Co., supra; Tichner v. Portland et al, supra.*

In both *Swigert* and *Tichner* the legislation operated prospectively and, if population was the basis upon which to create the classification, it would not be rational to exclude other cities which might attain that population. The intention here was to foreclose any future claims. Defendants' argument is really, once again, that the legislature could not cut off those claims. We have held that it could. We have held further that, in doing so, the legislature created classifications which have a rational relationship to the act. The act is not special legislation.

Affirmed.