640 S.E.2d 64

**Martha F. RYAN, Appellant,**

v.

**Charles E. RYAN Appellee.**

No. 33004.

Supreme Court of Appeals of
West Virginia.

Submitted: Oct. 4, 2006.

Decided: Dec. 1, 2006.

James Wilson Douglas, Sutton, Counsel for Martha F. Ryan.

Mark A. Swartz, Allyson H. Griffith, Charleston, Counsel for Charles E. Ryan.

BENJAMIN, Justice.

The Appellant herein and plaintiff below, Martha F. Ryan, appeals from an order of the Circuit Court of Kanawha County, wherein the court refused Mrs. Ryan's appeal from an order of the Family Court of Kanawha County and thereby affirmed it. The family court had denied Mrs. Ryan's petition for modification, and subsequent prayer for voidance, of a property settlement agreement and an amendment thereof between herself and her former husband, Appellee Charles E. Ryan. By her filings in the family court, Mrs. Ryan sought to extend Mr. Ryan's contractual obligation to provide alimony support to her beyond February 2004. After a careful review of the record and briefs, and having heard the arguments of the parties, we affirm.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The Ryans were divorced by bifurcated order of the Circuit Court of Kanawha County, dated December 27, 1993. They subsequently entered into a Property Settlement Agreement on March 1, 1994 (hereinafter "Property Agreement" or "Agreement"), which was approved, confirmed and ratified by a final order of the circuit court entered on May 2, 1994.

The Property Agreement required Mr. Ryan, commencing March 1, 1994, to pay Mrs. Ryan $6,000 per month, as alimony, for a period of twelve years ending with Mr. Ryan's February 2006 payment. The Agreement also provided, however, that if Mrs. Ryan sold her stock in R–M, Inc. for $80,000 or more within ten years of the Agreement, then Mr. Ryan's alimony obligation was to be ten years instead of twelve years. Therefore, if Mrs. Ryan received the said payment for her stock, the alimony obligation of Mr. Ryan would end after the February 2004 payment. A further provision of the Agreement barred Mrs. Ryan from "petition[ing] the Court for an increase in the monthly alimony for said twelve(12) year period."

Mr. Ryan timely made his alimony payments to Mrs. Ryan pursuant to the Agree-

ment. In a May 28, 1999, Amendment to their Agreement (hereinafter "Amendment"), the parties acknowledged that Mrs. Ryan had so-elected to sell her stock and had received the necessary sum thereby reducing Mr. Ryan's alimony-payment obligation from twelve to ten years, ending with the February 2004 payment.[1]

On or about January 12, 2004, less than a month before Mr. Ryan's last obligated alimony payment was due, Mrs. Ryan filed a petition in the Family Court of Kanawha County requesting modification of the Property Agreement and of the Amendment to extend Mr. Ryan's alimony payments to her beyond the February 2004 payment. In support of her Petition seeking modification of the Agreement and Amendment, Mrs. Ryan claimed that both she and Mr. Ryan had labored under a mutual mistake of fact at the time of the Agreement and Amendment. Specifically, she contended that both she and Mr. Ryan mistakenly believed at the time of the Agreement and Amendment that the investment of the assets allotted to her therein would generate sufficient income to support her and thus make unnecessary continued payments of alimony after February 2004. Mrs. Ryan complained that her investment income had, in actuality, fallen short of what she contends that she and Mr. Ryan had expected.[2]

The 1999 Amendment was a mutually negotiated agreement and anything related to the 1997 tax issues of the Ryans were clearly in the contemplation of the parties in 1999. In addition to dealing with the tax consequences of the surrender and redemption of Mrs. Ryan's stock in Charles Ryan Associates, Inc., the Amendment amended the Property Agreement to "RELEASE . . . each other . . . from any and all claims, demands . . . of whatsoever kind or character, past, present or future, known or unknown, . . . arising out of the underlying divorce." It twice states that the parties thereto had agreed and that it was their intention that no court "shall have authority to change, amend, modify or entertain litigation or lawsuit between the parties hereto concerning the issues set forth in this Amendment."[3] It also

1. Although Mrs. Ryan claimed that the Amendment was brought about by "litigation" over her and Mr. Ryan's respective 1997 tax liabilities under the terms of the Property Agreement, the actual terms of the Amendment, with respect to tax matters, is limited to how the parties agreed to satisfy federal and state income tax obligations due on the surrender and redemption of Mrs. Ryan's stock in Charles Ryan Associates, Inc., the responsibility for which had not been specifically addressed in the Property Agreement.

2. Mrs. Ryan gave two reasons for the shortfall in her investment income. First, she asserted that the unexpected decline in the stock and securities markets after May 1999 had caused the shortfall. Second, she contended that Mr. Ryan had interfered with her opportunities to invest due to their mutual misunderstanding of the effect certain Internal Revenue Service regulations would have upon their respective tax liabilities under the terms of the Property Agreement. This mutual misunderstanding, according to representations made by Mrs. Ryan in her family court petition, resulted in litigation of 1997 tax issues which not only interfered with her investment opportunities, but also caused her and Mr. Ryan to enter into the 1999 Amendment of their Property Agreement. Mrs. Ryan does not before this Court, and, as far as we can determine, did not before the family court or the circuit court, make an issue of how the Amendment provides for the satisfaction of income tax liabilities. Rather, her complaint, insofar as taxes are concerned, is apparently limited to a claimed diminution of the value of her stock and securities portfolio resulting from "[t]he interference with investment opportunities caused by the litigation of the tax issues" that followed from Mr. Ryan having filed a Form 1099 with the Internal Revenue Service.

3. In Proposed Findings of Fact and Conclusions of Law which Mrs. Ryan later filed with the family court, Mrs. Ryan urged the family court to find that the Amendment "was in response to an I.R.S. audit of [her]" and that "[t]he said audit was precipitated by Mr. Ryan's breach of the parties' property settlement agreement which had expressly intended the various equitable distribution payments to the wife from the parties' businesses be considered non-taxable events." The claimed "breach" that resulted in the audit was, according to her Petition for Appeal to this Court, the "intentional and arguably improperly motivated filing [by Mr. Ryan] of an IRS Form 1099 with the Internal Revenue Service . . . in 1997 reporting as income to [Mrs. Ryan] the equitable distribution payments she received under the terms of the aforesaid March 1, 1994 Property Settlement Agreement." In that same Petition for Appeal, Mrs. Ryan asserted that the filing of the Form 1099 "violated the explicitly stated intention of the Parties' agreement to make [her] equitable distributions non-taxable" in that the Form 1099 "report[ed] her . . . equitable distribution payments under the agreement as ordinary income," and that the Amendment

states "that under no circumstances shall either [of the parties thereto] be able to change, amend, modify or entertain litigation or lawsuit between the parties hereto concerning the issues set forth in this Amendment for the purpose of changing, amending and/or modifying such agreement as to the parties hereto." The parties appear to have accepted the fact that both the Property Agreement and the Amendment precluded Mrs. Ryan from ever seeking additional alimony from Mr. Ryan after the last payment of alimony under the provisions of the Property Agreement.[4] That possibly explains why Mrs. Ryan herein sought court reformation or rescission of that Agreement and of the Amendment because of a mutual mistake rather than seeking additional alimony under the terms of the Agreement and the Amendment.

In its order of April 1, 2005, the family court denied Mrs. Ryan's Petition for Modification and subsequent prayer to void the Property Agreement and Amendment. The denial was based upon a legal conclusion and an alternative determination, namely, "Mistakes that make contracts voidable or reformable must be about existing facts (past or present) when the contract was made and not be simply poor predictions of future events," and Mrs. Ryan "has failed to prove by a preponderance of the evidence that there was a mutual mistake, i.e., one shared by [Mr. Ryan] in the formation of the contract."

Mrs. Ryan appealed the family court order to the circuit court, which in an order entered on July 12, 2005, refused the appeal and affirmed the family court order. The circuit court concluded as a matter of law "that the contract [between Mrs. Ryan and Mr. Ryan] was not voidable due to a mistake of fact" after having earlier concluded that "[t]he only 'mistake' that this Court can find in this case is the possible 'mistake' of believ-

ing that the market would perform in a certain way. The 'mistake' was not about a past or then-present fact; it was a mistake about future events based on investment in the market, which is hardly predictable and certainly never certain." Subsequently, Mrs. Ryan appealed to this Court asking for a reversal of the circuit court and family court orders, or in the alternative, that the case be remanded with instructions.

## II.

### STANDARD OF REVIEW

■ " 'In reviewing a final order entered by a circuit judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law de novo.' Syllabus, Carr v. Hancock, 216 W.Va. 474, 607 S.E.2d 803 (2004)." Syl. pt. 1, Staton v. Staton, 218 W.Va. 201, 624 S.E.2d 548 (2005).

## III.

### DISCUSSION

On appeal, Mrs. Ryan contends that the alimony provisions of her Agreement and Amendment with Mr. Ryan should be modified or voided based upon the doctrine of "mutual mistake." In that regard, she further asserts that the family court erred in failing to consider certain evidence which she contends is favorable to her position. Finally, Mrs. Ryan contends that the Agreement at issue provided for "rehabilitative alimony" which was subject to modification due to a change in circumstances. We disagree, concluding as a matter of law that neither Mrs. Ryan's petition for modification nor her affidavit allege the kind of "mutual mistake" that is cognizable as the type of mistake of

followed from "extensive and expensive negotiation" arising out of the I.R.S. audit. Mrs. Ryan does not before this Court and, as far as we can determine, did not before the family court or the circuit court make an independent issue of the claimed "breach" of the Property Agreement by Mr. Ryan.

4. In the course of proceedings leading to court ratification of the Property Agreement, Mrs. Ryan was asked by her attorney whether she understood that she could "never, ever after the twelve year period [provided for in the Property Agreement] come back in and seek additional alimony from Mr. Ryan?" She replied "Yes."

fact for which a contract or agreement may be reformed or voided under West Virginia law.

### A. "Mutual Mistake"

■ Mrs. Ryan contends on appeal that the Agreement and Amendment which she entered into with her ex-husband should be reformed or voided because she and Mr. Ryan were mistaken in their mutual belief that the asset provisions of the said agreements would result in investments which would generate sufficient income to support her and thus make continued alimony payments after February 2004 unnecessary. While Mrs. Ryan is correct that a mutual mistake of fact may, under certain circumstances, justify the reformation or rescission of a contract, that statement does not answer the question of whether a mutually mistaken belief or expectation involving future facts, occurrences or events, as alleged herein, is a "mistake" for purposes of the invoked legal principle.

■ "A mutual mistake is one which is common to all parties, wherein each labors under the same misconception respecting a material fact or provision within the contract." Syl Pt. 4, *Smith v. Smith*, 219 W.Va. 619, 639 S.E.2d 711 (2006) (No. 33063). In support of her contention herein, Mrs. Ryan relies, in part, upon this Court's decision in *McGinnis v. Cayton*, 173 W.Va. 102, 312 S.E.2d 765 (1984), and, in particular, upon its Syllabus point 2:

> Where a *mistake* of both parties at the time of a contract was made as to a *basic assumption* on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake.

(Emphasis added.) This syllabus point in *McGinnis* was taken directly from the *Restatement (Second) of Contracts*, § 152(1). 173 W.Va. at 106, 312 S.E.2d at 769. Resort to the *Restatement* reveals the Appellant's position to be untenable under the circumstances present herein.

The term "mistake" as used in the *Restatement* and adopted in *McGinnis* is defined and commented upon in the preceding section, § 151, of the *Restatement*. As there defined, "A mistake is a belief that is not in accord with the facts." In Comment a. to § 151, it is stated:

> The word "mistake" is not used here, as it is sometimes used in common speech, to refer to an improvident act, including the making of a contract, that is the result of such an erroneous belief. The usage is avoided here for the sake of clarity and consistency. Furthermore, the erroneous belief must relate to the facts as they exist at the time of the making of the contract. *A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a "mistake" as that word is defined here.*

(Emphasis added.)[5] Although we have not had occasion to consider the issue of "mutual mistake" in the context of events to occur in the future, we observe that other jurisdictions follow the *Restatement* position. *See, United States v. Southwestern Elec. Co-op., Inc.*, 869 F.2d 310, 314 (7th Cir.1989) ( "the doctrine of mutual mistake does not cover an erroneous 'prediction or judgment as to events to occur in the future'...'it must be a mistake of a present or past fact." ') (internal citations omitted);*Baker v. Penn Mut. Life Ins. Co.* 788 F.2d 650, 661 (10th Cir.1986)("at the time the parties entered into the 1975 Contract, the result of plaintiff's future performance under the contract could only have been mere conjecture, not an existing fact. No claim of mutual mistake can be stated on such a basis.") ( footnote omitted); *Shear v. National Rifle Ass'n of America*, 606 F.2d 1251, 1260 (D.C.Cir.1979) ("The mistake does not apply to predictions or promises of future conduct."); *Hartford Fire Ins. v. Federated*

---

5. The Restatement provides this illustration:
    2. A contracts to sell and B to buy stock amounting to a controlling interest in C Corporation. At the time of making the contract, both A and B believe that C Corporation will have earnings of $1,000,000 during the following fiscal year. Because of a subsequent eco-nomic recession, C Corporation earns less than $500,000 during that year. Although B may have shown poor judgment in making the contract, there was no mistake of either A or B, and the rules stated in this Chapter do not apply.

*Dept. Stores,* 723 F.Supp. 976, 994 (S.D.N.Y.1989)(noting that erroneous predictions are not mistakes that allow rescission.); *Haas v. Pittsburgh Nat. Bank,* 495 F.Supp. 815, 818–19 (W.D.Pa.1980) ("The court is confronted here, at best, with a risk that resulted from the inability of the parties to predict future events. As the Restatement and other authorities make clear, such risks are distinct from bona fide mutual mistakes of fact and provide no basis for reformation of a contract."); *Boles v. Blackstock,* 484 So.2d 1077, 1082 (Ala.1986) ("as a matter of law, reliance on a prediction as to future events, will not support a claim for rescission or release based on a claim of mutual mistake of fact"); *In re Marriage of Hall,* 681 P.2d 543, 545 (Colo.App.1984)("A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' for the purpose of making a contract voidable."); *Beals v. Tri–B Associates,* 644 P.2d 78, 80 (Colo.App.1982) ("the parties in this case did not make the type of mistake which would justify rescission ... If the parties harbor only mistaken expectations as to the course of future events ... rescission is not proper.") (internal citations omitted); *Highway and Trans. Dept. v. Garley,* 111 N.M. 383, 806 P.2d 32, 36 (1991)(finding an erroneous prediction of the future is not a mistake under the doctrine of mutual mistake); *Opsahl v. Pinehurst, Inc.,* 81 N.C.App. 56, 344 S.E.2d 68, 72 (1986) (The court reasoned that, to justify rescission of the contract for mutual mistake, the mistake must have concerned facts as they existed when the contract was made.); *Jackson County v. Jackson Educ. Serv. Dist.,* 90 Or.App. 299, 752 P.2d 1224, 1228 (1988), *review denied* 306 Or. 155, 758 P.2d 346 (1988) ("Each side might have fervently hoped that the legislation would or would not result, but that hope is not a fact upon which a contract may be found to be invalid.").

■ The Court of Appeals for the Fourth Circuit addressed the issue here considered quite well:

> In determining whether there has been a mutual mistake of fact, we must examine

the facts as they existed at the time of the agreement. . . . A mutual mistake in prophecy or opinion may not be taken as a ground for rescission where such mistake becomes evident through the passage of time. What is today only a conjecture, an opinion, or a guess, might by tomorrow, through the exercise of hind-sight, be regarded then as an absolute fact.

*United States v. Garland,* 122 F.2d 118, 122 (1941) (internal citation omitted). We agree. A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a "mistake" for the purpose of reforming a contract or making a contract voidable.

Moreover, the term, "basic assumption," in the *Restatement* provision, as incorporated by Syllabus Point 2 of our opinion in *McGinnis,* does not include the continuation of existing market conditions. In the *Restatement's* discussion of "basic assumption" in its Comment b to § 152, the *Restatement* provides, "market conditions and the financial situation of the parties are ordinarily not such assumptions, and, generally, just as shifts in market conditions or financial ability do not effect discharge [of a contract] under the rules governing impracticability, mistake as to market conditions or financial ability do not justify avoidance under the rules governing mistake."

■ Accordingly, we hold that a contract may not be reformed or rescinded based upon a mutual mistake of fact if the mistake relates to a mistaken belief, judgment, or expectation as to future, rather than past or present, facts, occurrences or events. If a party to a contract could reform or rescind a contract on the ground that an expectation as to future results or occurrences was mistaken, the stability and binding force of many contracts would be destroyed. *See Babcock Coal & Coke Co. v. Brackens Creek Coal Land Co.,* 128 W.Va. 676, 682–83, 37 S.E.2d 519, 522 (1946); *Orlandi v. Goodell,* 760 F.2d 78, 82 (4th Cir.1985).[6]

---

**6.** There being no "mistake" here sufficient as a matter of law to reform or void the Agreement of Amendment of the Ryans, it is unnecessary to consider whether any error as to the future was "mutual" between the parties.

## B. Evidentiary and "Rehabilitative Alimony" Matters Before the Family Court

■ Before the family court, Mrs. Ryan contended that the family court erred in failing to deem her averments as established fact, that the family court improperly disregarded uncontroverted evidence, and that she was not provided an adequate opportunity to develop evidence related to the allegations of her modification petition. Such arguments are unavailing to Appellant.

Mrs. Ryan's petition for modification of the Agreement and Amendment was based exclusively upon her claim that at the time of the Agreement and Amendment, she and Mr. Ryan believed or expected that the investment of the assets allotted to her thereunder would generate sufficient income in the future to support her and thus make unnecessary continued payments of alimony after February 2004. In each of these claimed errors, Mrs. Ryan focuses on proof of a mutual mistake rather than on whether the claimed mutual mistaken expectations and beliefs about future results and occurrences constitute the kind of "mistake" that will legally justify the reformation or voidance of the Agreement or the Amendment.

■ We observe that in her appeal of the family court order to the circuit court, Mrs. Ryan did not assign any of these claimed evidentiary errors as an error of the family court. Further, there was no discussion in the circuit court's order respecting any of these alleged errors. " 'This Court will not consider questions, nonjurisdictional in their nature, not acted upon by the circuit court as an intermediate appellate court.' Point 1, syllabus, *Pettry v. Chesapeake and Ohio Railway Company*, 148 W.Va. 443 [135 S.E.2d 729]" Syl. Pt. 3, *Chafin v. Wellman*, 156 W.Va. 236, 192 S.E.2d 490 (1972). According, we will not consider these alleged errors.[7]

■ With respect to Mrs. Ryan's contention that the alimony provided for in the Agreement was "rehabilitative alimony", the record herein reflects that Mrs. Ryan's modification petition filed with the family court does include a claim that the alimony payment was intended by the parties to be temporary or rehabilitative in nature and that she and Mr. Ryan expected that Mrs. Ryan's investments would render her self-supporting by the date those payments were scheduled to terminate. However, the affidavit which Mrs. Ryan filed with the family court in support of her petition does not describe the alimony payments provided by the Property Agreement as temporary or rehabilitative in nature; rather, it focused on her belief, and what she claimed was Mr. Ryan's belief, that the investment of the alimony payments and assets allotted to her by that Agreement "would produce sufficient income for me to be supported by the income from those assessments by the time the scheduled alimony payments terminated." She concluded her affidavit with the statement that had she not had that belief she would not have entered into the Agreement and Amendment.

The family court in its order of April 1, 2005, concluded (1) that "[t]he primary standard to determine whether or not a court should modify an order awarding alimony is a substantial change of circumstances"; (2) that the party petitioning for modification of an alimony award has the burden of proving a substantial change of circumstances; and (3) that Mrs. Ryan "offered no evidence at or before the hearing to support a claim that the alimony payable under the Agreement should be modified due to a change of circumstances." In her Petition for Appeal from Family Court Order to the circuit court, however, Mrs. Ryan assigned four errors made by the family court as providing grounds for appeal. None of those errors related to these three conclusions of the family court. They all related to the mutual mistake of fact as the circuit court itself found in its final order denying the appeal and affirming the order of the family court.

7. Were we to do so, however, we would be confronted with the conclusion that even if Mrs. Ryan were correct in her contentions, the claimed mutual mistake of fact would not be sufficient under our holding herein to justify the reformation or rescission of the Agreement or Amendment because the claimed "mistake" relates to a mistaken belief, judgment, or expectation as to future, rather than past or present, facts, occurrences or events.

There is no discussion in the circuit court's order respecting any of those three conclusions of the family court. Accordingly, we decline to consider further this alleged error of Mrs. Ryan. *Id.*[8]

## IV.

## CONCLUSION

Accordingly, for the reasons stated, we affirm the Final Order Refusing Appeal And Affirming Family Court Final Order entered by the Circuit Court of Kanawha County on July 12, 2005, in its Civil Action No. 92–C–8910.

Affirmed.

---

8. "The concept of 'rehabilitative alimony' generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained." Syl. Pt. 1, *Molnar v. Molnar*, 173 W.Va. 200, 314 S.E.2d 73 (1984); Syl. pt. 3, *Wyant v. Wyant*, 184 W.Va. 434, 400 S.E.2d 869 (1990). Were we to consider Mrs. Ryan's contentions, we would be troubled that, time and again throughout this proceeding, Mrs. Ryan has stated that the object of the Property Agreement was to provide support for her at the same level she had enjoyed before and after the divorce from investments of the alimony and asset allotments. She has never claimed that the purpose of the alimony was to encourage her to become self-supporting by obtaining gainful employment. We would also be troubled by Mrs. Ryan's admission that she understood that the Property Agreement precluded her from ever coming back after the last alimony payment thereunder to seek additional alimony from Mr.Ryan. In *Banker v. Banker*, 196 W.Va. 535, 548, 474 S.E.2d 465, 478 (1996), we said, "an agreement to preclude subsequent modification of alimony is enforceable if it is either made part of a judicially approved separation agreement or it is expressed in the order granting the divorce. In either situation, the language of the agreement must be clear and unambiguous." The Appellant throughout this proceeding has never contended that the Property Agreement and Amendment in this regard are other than clear and unambiguous.