821 So.2d 388 (2002)
CAMPUS COMMUNICATIONS, INC., Appellant/Cross-Appellee,
v.
Teresa EARNHARDT, and the Estate of Dale Earnhardt, by and through its Personal Representative, Teresa Earnhardt, for and on behalf of the Estate and for the Survivors, et al., Appellees/Cross-Appellants.
No. 5D01-2419.
District Court of Appeal of Florida, Fifth District.
July 12, 2002.
*390 Thomas R. Julin & D. Patricia Wallace of Hunton & Williams, Miami, for Appellant/Cross-Appellee.
Charles T. Canady, General Counsel, and Simone Marstiller, Assistant General Counsel, Executive Office of the Governor, Tallahassee, Amicus Curiae, for Governor Jeb Bush.
Jonathan D. Kaney, Jr. and Daniel R. Bischof of Cobb, Cole & Bell, Daytona Beach, Amici Curiae, for Florida Society of *391 Newspaper Editors, First Amendment Foundation, Reporters Committee for Freedom of the Press, and Student Press Law Center.
E. Thom Rumberger and Ernest H. Eubanks, Jr. of Rumberger, Kirk & Caldwell, P.A., Orlando, and Parker D. Thomson and Carol A. Licko of Hogan & Hartson, LLP, Miami, and Jon L. Mills and Timothy McLendon, Gainesville, and Dickson M. Lupo and Judson Graves of Alston & Bird, LLP, Charlotte, NC, for Appellees/Cross-Appellants Teresa Earnhardt and the Estate of Dale Earnhardt, by and through its Personal Representative, Teresa Earnhardt, for and on behalf of the Estate and for the Survivors.
Thomas E. Warner, Solicitor General, and T. Kent Wetherell, II, Deputy Solicitor General, Office of the Solicitor General, Tallahassee, for Appellee/Cross-Appellant State of Florida.
Daniel D. Eckert, County Attorney, Deland, for Appellee/Cross-Appellant County of Volusia, Office of the Medical Examiner.
SAWAYA, J.
Campus Communications, Inc. (Campus) appeals the final judgment finding Chapter 2001-1, codified at section 406.135, Florida Statutes (2001), constitutional and retroactively applicable to the request made by Campus to view and copy the autopsy photographs of R. Dale Earnhardt.[1] We affirm.

Factual Background And Issues
Mr. Earnhardt was a famous and very successful race car driver who became involved in a fatal crash during the Daytona 500 race on February 18, 2001. He was taken to Halifax Medical Center where, sadly, life-saving efforts were unsuccessful. Mr. Earnhardt was pronounced dead on that same date.
An autopsy was performed on February 19, 2001, by an assistant to the Volusia County Medical Examiner in accordance with Florida law governing accidental deaths.[2] In performing the autopsy, thirty-three photographs were taken which, according to the uncontradicted testimony of the medical examiner, were not of "diagnostic quality" and were taken solely as a back-up to the dictation system utilized by the medical examiner to record his findings for inclusion in a written autopsy report.
The written autopsy report, post-crash photographs of Mr. Earnhardt's car, a toxicology report and a sketch showing the markings on Mr. Earnhardt's body were promptly made available to the public. The autopsy photographs, however, were not released because on February 22, 2001, Mrs. Earnhardt sought and obtained an ex parte injunction precluding the medical examiner from releasing them. This injunction *392 was obtained before any request for access to the photographs was made.
On February 23, 2001, the Orlando Sentinel newspaper requested the autopsy photographs. Michael Uribe, who operates a for-profit website on which he publishes celebrity autopsy photographs, also made a request for the photographs. Mr. Uribe had previously published the autopsy photographs of Neil Bonnett and Rodney Orr, both of whom were race car drivers killed in crashes at the Daytona International Speedway. Both requests were denied pursuant to the injunction.
The medical examiner, the Earnhardts and the newspaper interests represented by the Orlando Sentinel subsequently entered into a mediation agreement whereby they agreed that the photographs would be examined by an expert in biomechanics who would issue a report and, thereafter, the photographs would be permanently sealed. Neither Campus nor Mr. Uribe participated in the mediated settlement and on the same day the agreement was reached, Campus made its request for the photographs.
On March 29, 2001, the Florida Legislature enacted section 406.135, which was signed by Governor Bush and became effective on that same date. Upon passage of the statute, the Earnhardts amended their request to include permanent injunctive relief under the statute. Campus filed a cross-claim against the medical examiner seeking an order under the Public Records Act requiring the medical examiner to allow inspection and copying of the photographs. Trial subsequently commenced, evidence and testimony were presented, and the trial court rendered its decision finding the statute constitutional and retroactively applicable to the requests made by Campus and Mr. Uribe.
The issues we are confronted with in the instant proceedings are 1) whether section 406.135 is overly broad and therefore unconstitutional; 2) whether the statute should be applied retroactively; and 3) whether the trial court erred in finding that Campus failed to establish good cause under the statute to allow inspection and copying of the photographs. We will proceed to address each issue in the order presented.

Constitutionality Of The Statute

General Principles and Legislative Findings
We begin our analysis with the generally accepted principle that "all laws are presumed constitutional" and "[t]he burden rests on the party challenging the law to show that it is invalid." Chicago Title Ins. Co. v. Butler, 770 So.2d 1210, 1214 (Fla.2000) (citations omitted). If any doubt exists as to the validity of a law, it must be resolved in favor of constitutionality where reasonably possible. L.B. v. State, 700 So.2d 370 (Fla.1997); Department of Law Enforcement v. Real Prop., 588 So.2d 957, 961 (Fla.1991).
Both the Florida Constitution and the Public Records Act allow for the creation of exemptions to the Act by the Legislature, provided the newly enacted exemption 1) serves an identifiable public purpose and 2) is no broader than necessary to meet that public purpose. Art. I, § 24(c), Fla. Const.; § 119.15(4)(b), Fla. Stat. (2001). As to the first requirement, the Legislature must specifically state the public necessity which justifies the exemption. Art. 1, § 24(c), Fla. Const. In order to fulfill these constitutional and statutory requirements, the Legislature made the following findings:
The Legislature finds that it is a public necessity that photographs and video and audio recordings of an autopsy be made confidential and exempt from the requirements of section 119.07(1), Florida *393 Statutes, and Section 24(a) of Article I of the State Constitution. The Legislature finds that photographs or video or audio recordings of an autopsy depict or describe the deceased in graphic and often disturbing fashion. Such photographs or video or audio recordings may depict or describe the deceased nude, bruised, bloodied, broken, with bullet or other wounds, cut open, dismembered, or decapitated. As such, photographs or video or audio recordings of an autopsy are highly sensitive depictions or descriptions of the deceased which, if heard, viewed, copied or publicized, could result in trauma, sorrow, humiliation, or emotional injury to the immediate family of the deceased, as well as injury to the memory of the deceased. The Legislature notes that the existence of the World Wide Web and the proliferation of personal computers throughout the world encourages and promotes the wide dissemination of photographs and video and audio recordings 24 hours a day and that widespread unauthorized dissemination of autopsy photographs and video and audio recordings would subject the immediate family of the deceased to continuous injury. The Legislature further notes that there continue to be other types of available information, such as the autopsy report, which are less intrusive and injurious to the immediate family members of the deceased and which continue to provide for public oversight. The Legislature further finds that the exemption provided in this act should be given retroactive application because it is remedial in nature.
Ch.2001-1, § 2, at 2, Laws of Fla.
We will address the specificity requirement first.

The Specificity Requirement
As to the requirement that the exemption serve an identifiable public purpose, the Legislature must "state with specificity the public necessity justifying the exemption." Art. I, § 24(c), Fla. Const. We find that chapter 2001-1, Laws of Florida, clearly satisfies this requirement. The legislative findings detail the graphic and often gruesome nature of such autopsy photographs and the trauma and emotional injury the immediate family of the deceased would likely suffer if these records were disclosed and disseminated to the public. The Legislature also recognizes the potential for exacerbation of such injury in light of the ever increasing use of the Internet and the proliferation of personal computers. These findings are supported by the evidence and testimony introduced in the proceedings before the trial court.
We need not address the specificity requirement any further because Campus does not forcefully challenge the Legislature's statement of public necessity. Rather, Campus focuses on the argument that the exemption is overly broad.

The Exemption Must Not Be Overly Broad
Campus contends that section 406.135 is unconstitutional because it is broader than necessary to meet the statute's public purpose. Specifically, Campus argues that the finding made by the Legislature that some photographs "may" show gruesome scenes and that trauma "could" result from publication of the autopsy photographs is explicit recognition that photographs are not always gruesome and that trauma does not always result from their viewing. Therefore, Campus asserts, the Legislature exempted more records than were necessary to serve the purpose of the statute.[3] *394 We disagree that the statute is overly broad.
We find the scope of section 406.135 to be specific and narrow: it applies only to autopsy photographs and audio and video recordings of the autopsy. It does not apply to other records of the autopsy such as the written autopsy report and, therefore, those materials remain unrestricted public records. Moreover, in the instant case, the trial court found that there was no information that could be obtained from the autopsy photographs of Mr. Earnhardt that was not contained in the autopsy report which was published to the parties and the public.
Equally important, despite the fact that autopsy photographs and audio and video recordings are no longer considered unrestricted public records, is the inclusion of the good cause provisions which do allow the publication of these restricted records if the statutory criteria are established. See § 406.135(2)(a), Fla. Stat. (2001). Thus the fact that the Legislature used "may," "could" and "often" is not evidence that the exemption is overly broad, but rather a recognition that circumstances may exist which would justify disclosure of autopsy photographs and audio and video recordings upon a showing of good cause. Moreover, use of the absolute terminology advocated by Campus such as "would," "always" and "must" would foreclose the possibility that disclosure could be made even upon a showing of good cause.
We find Bryan v. State, 753 So.2d 1244 (Fla.), cert. denied, 528 U.S. 1185, 120 S.Ct. 1236, 145 L.Ed.2d 1132 (2000), analogous to the instant case. In Bryan, the court analyzed a public records exemption provided in section 945.10(1)(e), Florida Statutes (1999), which exempted from disclosure records and information of the Department of Corrections "which if released would jeopardize a person's safety." The Legislature had justified the adoption of this exemption by stating that "it is a public necessity that the department records... remain confidential and exempt from public disclosure ... because to provide otherwise would in some cases conflict with other existing law or would reveal information that would jeopardize the safety of the guards, inmates, and others." Id. at 1250 (emphasis supplied). The legislative findings in Bryan that disclosure of the information "in some cases" would jeopardize an individual's safety could be considered constitutionally infirm on the same grounds advanced by Campus in the instant case, but the supreme court approved the exemption as being "supported by a thoroughly articulated public policy." Id. at 1251 (footnote omitted). Like the court in Bryan, we find the exemption provided in section 406.135 to be supported by a thoroughly articulated public policy and reject the argument that it is overly broad.
Campus next assails the "good cause" provision of the statute, protesting that the Legislature did not define this term.[4] We find that this argument lacks *395 merit because the statute requires consideration of specific criteria to determine whether good cause has been shown. See § 406.135(2)(a), Fla. Stat. (2001). Moreover, good cause is not a novel concept to our jurisprudence. Florida courts have applied good cause provisions in a variety of contexts, including the Public Records Act. See, e.g., § 119.07(7)(a), Fla. Stat. (2001); Department of Health & Rehabilitative Servs. v. Gainesville Sun Publ'g Co., 582 So.2d 725 (Fla. 1st DCA 1991). Therefore, the statute is not invalid because it fails to specifically define a term for which the courts already know the meaning.[5]
We find that section 406.135 serves an identifiable public purpose, is no broader than necessary to meet that public purpose and was enacted in accordance with the constitutional and legislative requirements we have previously discussed. The presumption of constitutionality has not been overcome by Campus. Therefore, we conclude that section 406.135 is constitutional. The next issue we must address is whether retroactive application of the statute is proper.

Retroactive Application

General Principles
When considering whether a statute should be retroactively applied, the courts should determine 1) whether there is clear evidence that the Legislature intended to apply the statute retrospectively; and 2) whether retroactive application is constitutionally permissible. Metropolitan Dade County v. Chase Fed. Hous. Corp., 737 So.2d 494 (Fla.1999). The second inquiry is generally premised on a finding by the court that the Legislature has clearly expressed an intent that the statute apply retrospectively. Id.
The first inquiry poses a question of statutory construction and requires application of a legal presumption which provides that statutes, in the absence of clear legislative intent to the contrary, should apply prospectively. Legislative intent must be determined primarily from the language of the statute and "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157 (1931)); see also Rollins v. Pizzarelli, 761 So.2d 294, 297 (Fla.2000); Chase Federal, 737 So.2d at 500 ("Of course, where the language of a statute contains an express command that the statute is retroactive, there is no need to resort to these canons of statutory construction.") (citations omitted); (Modder v. American Nat'l Life Ins. Co., 688 So.2d 330, 333 (Fla.1997).
*396 In the instant case, the Legislature was clear in its intent, twice expressly stating that section 406.135 was to be applied retroactively. § 406.135(4), Fla. Stat. (2001) ("This exemption shall be given retroactive application."); Ch.2001-1, § 2, at 2, Laws of Fla. ("The Legislature further finds that the exemption provided in this act should be given retroactive application because it is remedial in nature."). Therefore, we should neither apply the general rules of statutory construction to the statute nor indulge the presumption in favor of prospective application. See Arrow Air, Inc. v. Walsh, 645 So.2d 422, 425 (Fla. 1994) (stating that "[t]he presumption against retroactive application of a law that affects substantive rights ... is a well established rule of statutory construction" that "comes into play in the absence of an express statement of legislative intent.") (citations omitted). Hence we consider next whether retroactive application of section 406.135 is constitutionally permissible.
In instances where the Legislature clearly expresses the intent that a statute is to be given retrospective application, as in the instant case, the courts will refuse to apply the statute retroactively "if the statute impairs vested rights, creates new obligations, or imposes new penalties." State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 61 (Fla.1995) (citations omitted); see also Chase Federal. On the other hand, "[r]emedial ... statutes do not fall within the constitutional prohibition against retroactive legislation and they may be held immediately applicable to pending cases." Village of El Portal v. City of Miami Shores, 362 So.2d 275, 278 (Fla.1978) (citing Turner v. United States, 410 F.2d 837 (5th Cir.1969); City of Lakeland v. Catinella, 129 So.2d 133 (Fla. 1961); Grammer v. Roman, 174 So.2d 443 (Fla. 2d DCA 1965)); see also City of Orlando v. Desjardins, 493 So.2d 1027, 1028 (Fla.1986) ("If a statute is found to be remedial in nature, it can and should be retroactively applied in order to serve its intended purposes.").
As will be discussed, we find that section 406.135 is remedial and reject the argument advanced by Campus that its retroactive application does abrogate or impair a vested right.

Section 406.135 Is Remedial
One of the primary purposes of enacting remedial legislation is to correct or remedy a problem or redress an injury. See Roberts v. Butterworth, 668 So.2d 580 (Fla. 1996); Desjardins; St. John's Village I, Ltd. v. Department of State, Div. of Corps., 497 So.2d 990, 993 (Fla. 5th DCA 1986) ("By definition, a remedial statute is one which confers or changes a remedy; a remedy is the means employed in enforcing a right or in redressing an injury.") (citing Grammer). Specifically, in the context of disclosure of public records, the remedy sometimes lies in "mitigating the harsh provisions of the Florida Public Records Act ...." Desjardins, 493 So.2d at 1029.
In Desjardins, for example, the City of Gainesville was sued by the plaintiff who claimed that he sustained injuries in an automobile accident caused by the City's negligent inspection and maintenance of a traffic signal. The plaintiff served upon the City a request to produce its litigation file under the Public Records Act. The City declined the request, arguing that the file was protected by the work product rule and the attorney-client privilege. The trial court entered an order requiring the City to produce the file and refused to retroactively apply the statutory exemption of section 119.07(3)(o), Florida Statutes, which exempted from disclosure the work product of the government's attorneys. The trial court refused to apply the *397 exemption because the statute was enacted after the cause of action accrued. The Florida Supreme Court held that it was error not to apply the statute retroactively because it was enacted to remedy "the imbalanced posture and the disadvantaged status of public entities involved in litigation under the Public Records Act" prior to enactment of the exemption contained in the statute. Desjardins, 493 So.2d at 1029. Moreover, the court noted that the legislative history of the statute recognized the courts' concern over this problem and the need for "legislative resolution of the matter." Id.
In Roberts, a defendant sought disclosure of all public records held by the Attorney General's Office related to himself. He appealed after the trial court found the records sought either were not public records or were exempt under the work product rule. On appeal, the defendant argued that the trial court erred in applying the statutory capital collateral litigation work product exemption retroactively to a public records request that pre-dated the effective date of the new exemption. The supreme court rejected this argument and held:
Even though this particular provision did not take effect until October 1, 1995, the legislative history indicates that the statute is remedial in nature and thus can be applied retroactively. See City of Orlando v. Desjardins, 493 So.2d 1027 (Fla.1986) (holding that statutory work product exemption in chapter 119 was remedial in nature and thus applicable to cause of action that accrued prior to its effective date).
Roberts, 668 So.2d at 581-82 (footnote omitted). The court noted that the Legislature had justified making the statute remedial on the grounds that the "`premature disclosure of this information could be detrimental to the Attorney General's legal representation in these proceedings'" and "`the public harm in disclosing this work product significantly outweighs any public benefit derived from disclosure.'" 668 So.2d at 582 n. 5 (quoting ch. 95-398, § 17, at 3266, Laws of Fla.).
Similarly, the Legislature perceived the public necessity to correct the problems associated with public dissemination of autopsy photographs, especially over the Internet. Finding that this sort of public display of a decedent's remains is not only injurious to the family members of the decedent, but morally reprehensible and anathema to the citizens of Florida, the Legislature enacted section 406.135 to mitigate the harsh provisions of the Act that would allow public disclosure of such records. Realizing the necessity for immediate resolution of this problem, the Legislature declared that "the exemption provided in this act should be given retroactive application because it is remedial in nature." Ch.2001-1, § 2, at 2, Laws of Fla.[6]
Campus argues, however, that labeling a statute remedial does not necessarily mean that it should be automatically applied *398 retroactively if it impairs vested rights, creates new obligations, or imposes new penalties. We find language in Chase Federal, Laforet, and Arrow Air that supports this argument. See also Catinella. Therefore, because Campus contends that section 406.135 abrogates Campus's vested right to inspect and copy the autopsy photographs, we will next consider whether retroactive application of the statute should be prohibited on this ground.

Retroactive Application Of Section 406.135

Does Not Abrogate A Vested Right
The courts have been loath to formulate a definition of "vested right" that can be applied in all cases with precision and certainty. A general definition is found in City of Sanford v. McClelland, 121 Fla. 253, 163 So. 513 (1935), wherein the court held that "[a] vested right has been defined as `an immediate, fixed right of present or future enjoyment' and also as `an immediate right of present enjoyment, or a present, fixed right of future enjoyment.'" Id. at 514-15 (citing Pearsall v. Great N. Ry. Co., 161 U.S. 646, 16 S.Ct. 705, 40 L.Ed. 838 (1896)). "`[T]o be vested a right must be more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand, ....'" Division of Workers' Comp., Bureau of Crimes Comp. v. Brevda, 420 So.2d 887, 891 (Fla. 1st DCA 1982) (emphasis supplied) (quoting Aetna Ins. Co. v. Richardelle, 528 S.W.2d 280, 284 (Tex.Civ.App.1975)); see also Lamb v. Volkswagenwerk Aktiengesellschaft, 631 F.Supp. 1144, 1149 (S.D.Fla.1986); Clausell v. Hobart Corp., 515 So.2d 1275, 1276 (Fla.1987), cert. denied, 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988); In re Will of Martell, 457 So.2d 1064, 1068 (Fla. 2d DCA 1984) ("To be vested, a right must be more than a mere expectation based on anticipation of the continuance of an existing law ....") (citation omitted).
We are here concerned with the concept of vested rights in the context of the constitutional proscription against retrospective application of legislation. Within this context, a vested right is a "fixed" right that cannot be abrogated or taken away without violation of the possessor's right to due process. See Chase Federal, 737 So.2d at 503 ("Generally, due process considerations prevent the State from retroactively abolishing vested rights.") (citation omitted). The vested right claimed by Campus is the right to inspect and copy the autopsy photographs of Mr. Earnhardt. We disagree that this is a vested right for two reasons: 1) the right to inspect and copy public records is a right subject to divestment by enactment of statutory exemptions by the Legislature; and 2) the rights provided under the Public Records Act are public rights.
While the Public Records Act grants to Florida citizens the right to inspect and copy public records, "the legislature also has the prerogative to place reasonable restrictions on that right." Henderson, 745 So.2d at 326 (citation omitted). We, therefore, begin our analysis by noting that all public records are subject to public inspection and copying unless the records fall within a specific statutory exemption enacted by the Legislature. Both the Florida Constitution and the Public Records Act specifically allow for the creation of exemptions. Article I, section 24(c) of the Florida Constitution provides in pertinent part that "[t]he legislature, however, may provide by general law for the exemption of records from the requirements of subsection (a)." Section 119.15(4)(b), Florida Statutes (2001), similarly provides in pertinent part that "[a]n *399 exemption may be created or maintained." Thus both the Florida Constitution and the Public Records Act declare that the right to inspect and copy public records is a right subject to divestment by legislative enactment. Hence, the right claimed by Campus to view the autopsy photographs is not a "fixed" right and thus it is not a vested right within the context of the constitutional prohibition against retroactive application of legislation. Rather, it is more akin to "an expectation based on an anticipation of the continuance of an existing law" with the "existing law" being the Public Records Act, and the "anticipation" being the maintenance of the current provisions of the Act unchanged by the Legislature's enactment of exemptions.
In State v. White, 194 So.2d 601 (Fla. 1967), for example, the Legislature enacted a statute that exempted certain motor carriers from having to obtain a certificate of public convenience and necessity from the Public Service Commission. The Legislature subsequently enacted a statute that eliminated this exemption, thereby imposing on carriers the requirement that they obtain a certificate. The defendant, who apparently had been a carrier prior to the enactment of the subsequent statute, was charged, after the statute went into effect, with transporting property on the public highways without the required certificate. The defendant claimed that the subsequent statute was unconstitutional and that the charges against him should be dismissed. The court disagreed and held that "[i]t is in accord with well recognized law and principle that [defendant] did not receive by virtue of any law or circumstance an absolute vested right to continue the operation in question without limitation or the legal possibility of subsequent abrogation." Id. at 603. Likewise, we conclude that Campus did not obtain by virtue of the Public Records Act or the Florida Constitution a vested right to copy or view the autopsy photographs of Mr. Earnhardt because the right was limited by "the legal possibility of subsequent abrogation."
Moreover, the Florida courts have consistently recognized that the right to inspect and copy public records under the Public Records Act is a public right.[7] The United States Supreme Court has held that for purposes of determining whether it is appropriate to allow retroactive application of a statute, only private, and not public rights, may become vested in this constitutional sense. Hodges v. Snyder, 261 U.S. 600, 43 S.Ct. 435, 67 L.Ed. 819 (1923). In Hodges, the plaintiffs, as resident taxpayers, brought suit challenging the validity of a consolidated school district which had been organized by the merger of several smaller districts. The lower court held that the attempted organization of the consolidated school district was not authorized by law and entered judgment holding the consolidation invalid. Thereafter, the Legislature enacted a statute legalizing and validating all proceedings relating *400 to the consolidated school district. The issue presented to the Court was whether retroactive application of the new statute deprived the plaintiffs of a vested right without due process. The Court recognized the general rule that private rights which have been vested by a judgment cannot be taken away by subsequent legislation. The Court held, however, that the rule against retroactive application of legislation does not apply to public rights, citing In re Clinton Bridge, 77 U.S.(10 Wall.) 454, 19 L.Ed. 969 (1870), and Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U.S.(18 How.) 421, 15 L.Ed. 435 (1855). The Court held that the right claimed by the plaintiff was a public right and therefore could not be considered a vested right for purposes of preventing retrospective application of the statute. The Court explained:
It is true that, as they contend, the private right of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation, but must be thereafter enforced by the court regardless of such legislation.
This rule, however, as held in the Wheeling Bridge Case, does not apply to a suit brought for the enforcement of a public right, which, even after it has been established by the judgment of the court, may be annulled by subsequent legislation and should not be thereafter enforced; although, in so far as a private right has been incidentally established by such judgment, as for special damages to the plaintiff or for his costs, it may not be thus taken away....
In the Wheeling Bridge Case, as in the Clinton Bridge Case, the public right involved was that of abating an obstruction to the navigation of a river. The right involved in the present suit, of enjoining the maintenance of an illegal school district and the issuance of its bonds, is likewise a public right shared by the plaintiffs with all other resident taxpayers. And while in the Wheeling Bridge Case the bill was filed by the State, although partly in its proprietary capacity as the owner of certain canals and railways, the doctrine that a judgment declaring a public right may be annulled by subsequent legislation, applies with like force in the present suit, although brought by individuals primarily for their own benefit; the right involved and adjudged, in the one case as in the other, being public, and not private.
261 U.S. at 603-04, 43 S.Ct. 435 (citations omitted).
Like the Court in Hodges, the Florida Supreme Court, in Chase Federal, held that due process considerations prevent the retroactive application of a statute when vested rights are abrogated. The Florida courts have consistently held that due process protects private rights. J.B. v. Florida Dep't of Children & Family Servs., 768 So.2d 1060 (Fla.2000); Department of Law Enforcement.[8] We find that *401 the choice of due process as the abiding constitutional principle that dictates the resolution of issues relating to the prohibition of retroactive legislation that abrogates a vested right adds currency to the general principle adopted in Hodges and numerous courts in other jurisdictions that the prohibition does not apply to public rights.[9]
If we were to accept the argument advanced by Campus that once a public record is created, a member of the public has a vested right to inspect and copy it, we would have to conclude that a statute that establishes an exception to the Public Records Act may never be applied retroactively. Adoption of such a rule would eliminate the Legislature's ability to enact remedial legislation to immediately resolve problems caused by public disclosure and to mitigate the sometimes harsh provisions of the Public Records Act. Moreover, adoption of such a rule would require us to ignore decisions of the courts of this state that have given retroactive application to such statutory exemptions. See Roberts; Desjardins. This we cannot do. Hence we reject the argument advanced by Campus that retroactive application of section 406.135 abrogates a vested right.
The last issue we must address is whether the trial court erred in finding that Campus failed to establish good cause under section 406.135.

Good Cause
Campus argues that even if section 406.135 is constitutional, the trial court erred in finding that Campus failed to establish good cause for release of the photographs. The statute requires consideration of the following factors in determining good cause: 1) whether disclosure is necessary so that the public can evaluate the government's performance; 2) the seriousness of the intrusion into the family's right to privacy; 3) whether disclosure is the least intrusive method available; and 4) the availability of similar information in other public records, regardless of form. § 406.135(2)(a), Fla. Stat. (2001).
As to the first factor, while the public obviously has a great interest in making certain its government, the medical examiner in the instant case, carries out its duties in a responsible fashion, that interest cannot be served by viewing the autopsy photographs of Mr. Earnhardt because the uncontradicted testimony establishes that the photographs are not of diagnostic quality. Moreover, the testimony further establishes that there is nothing that can be discerned from the photographs that is not contained in the autopsy report and other materials that have been released to Campus and the public. If it *402 cannot be determined from the photographs that the cause of death was anything other than what the medical examiner concluded, the photographs will not aid in assuring that the government is performing up to the required standard. Regarding the argument advanced by Campus that the photographs are needed to evaluate NASCAR safety requirements, the trial court found, and we agree, that the safety requirements of NASCAR, a private entity, do not implicate the public's interest in evaluating governmental performance sufficient to release the photographs.
The second factor weighs very heavily in favor of nondisclosure. The medical examiner testified that the photographs were "gruesome, grisly and highly disturbing," and the physician attending Mr. Earnhardt after the accident confirmed this. The trial court found that such publication would "be an indecent, outrageous, and intolerable invasion, and would cause deep and serious emotional pain, embarrassment, humiliation and sadness to Dale Earnhardt's surviving family members." It is evident from our review of the record that the publication of the nude and dissected body of Mr. Earnhardt would cause his wife and children pain and sorrow beyond the poor power of our ability to express in words.
Regarding the third factor, the trial court found that there were no less intrusive means available for preventing trauma to the Earnhardt family. Campus argues that inspection alone would not cause a serious intrusion into the privacy rights of the Earnhardt family. However, the trial court rejected this argument, finding that the mere knowledge that the photographs would be accessible for inspection was the cause of overwhelming distress to the Earnhardt family.
The fourth factor also weighs in favor of nondisclosure. As we previously stated, the autopsy report and other information was made available to the public and, given the poor quality of the photographs and the fact that they were only made as a back-up to the medical examiner's dictation system, disclosure of the photographs would reveal nothing that is not contained in the autopsy records that were released.
The standard of review regarding issues of good cause requires us to determine whether the trial court abused its discretion in making its decision. See Palokonis v. EGR Enters. Inc., 652 So.2d 482 (Fla. 5th DCA 1995); Williams v. Estate of Williams, 493 So.2d 44 (Fla. 5th DCA 1986). Based on our thorough review of the record in the instant case and our analysis of this issue, we conclude that the trial court did not abuse its discretion in finding that Campus failed to establish good cause under section 406.135.

Conclusion
The Florida Constitution gives every citizen the right to inspect and copy public records so that all may have the opportunity to see and know how the government functions. It is also a declared constitutional principle that every individual has a right of privacy, and while our constitution does not catalogue every matter that one can hold as private, autopsy photographs which display the remains of a deceased human being is certainly one of them. But we need not say so because the Legislature has said so and that is its prerogative, not ours. Thus our function here has not been to weigh these two constitutional rights with respect to autopsy photographs and determine whether the right that helps ensure an open government freely accessible by every citizen is more significant or profound than the right that preserves individual liberty and privacy. *403 Rather, our function has been to determine whether the Legislature has declared that the latter prevails over the former in a manner that is consistent with the constitutional provisions that bestow upon it the power to do so. We have fulfilled our judicial responsibility in this matter by determining whether section 406.135 was constitutionally enacted and whether it was properly applied under the facts and circumstances of the instant case. Having concluded that it was, we affirm the judgment under review.
We conclude our judicial responsibility by certifying to the Florida Supreme Court the following questions to be of great public importance:
1. IS SECTION 406.135 CONSTITUTIONAL?
2. IF SECTION 406.135 IS CONSTITUTIONAL, SHOULD IT BE APPLIED RETROACTIVELY?
AFFIRMED; QUESTIONS CERTIFIED.
PETERSON and GRIFFIN, JJ., concur.
NOTES
[1] Campus is the sole Appellant. Its position was supported by the brief of amici curiae: the Florida Society of Newspaper Editors, the First Amendment Foundation, the Reporters Committee for Freedom of the Press, and the Student Press Law Center. The Appellees are Teresa Earnhardt, the Estate of Dale Earnhardt, Dale Earnhardt Jr., Taylor Earnhardt, Dale Earnhardt, Inc., the Volusia County Office of the Medical Examiner, and the State of Florida. An amicus curiae brief was filed by Governor Jeb Bush supporting Appellees' position on the constitutionality of section 406.135. The cross-appeal filed by Appellees was abandoned.
[2] Section 406.11(1)(a)2., Florida Statutes (2001), provides that if a human being dies by accident in the State of Florida, the medical examiner of the district in which the death occurred or where the body is found "shall determine the cause of death and shall, for that purpose, make or have performed such examinations, investigations, and autopsies as he or she shall deem necessary or as shall be requested by the state attorney ...."
[3] Campus raises two other arguments: 1) the statute is unconstitutional because immediate family members may object and keep the records from being disclosed while other family members may not object to disclosure; and 2) the exemption is overly broad because the Legislature could have avoided the publication issue by simply allowing inspection alone. We find these arguments have little merit and therefore affirm the trial court as to these issues.
[4] Campus also argues that the good cause provision is an improper delegation to the judiciary of legislative authority. We reject this argument because the Legislature made the fundamental and primary policy declarations regarding disclosure of autopsy photographs and audio and video recordings of autopsies and has provided explicit and detailed guidelines and standards for the courts to apply in determining whether good cause has been established. See Askew v. Cross Key Waterways, 372 So.2d 913 (Fla.1978). Furthermore, acceptance of the delegation argument would make every other statute authorizing the courts to act upon a showing of good cause constitutionally suspect. See, e.g., §§ 14.28, 39.202(5), 119.07(3), 240.2996(6), 288.075(2), 397.501(7)(a)5., 828.30(5), 985.04(4)(a), 985.05(2), 985.212(1)(b), Fla. Stat. (2001).
[5] See, e.g., Levine v. Kaplan, 687 So.2d 863, 865 (Fla. 5th DCA) (defining good cause, in the context of rule 1.420(e) of the Florida Rules of Civil Procedure, as "proof of some compelling reason" or "excusable conduct other than negligence") (citing Bruns v. Jones, 481 So.2d 544 (Fla. 5th DCA 1986)), review denied, 697 So.2d 511 (Fla.1997), disapproved of on other grounds, Metropolitan Dade County v. Hall, 784 So.2d 1087 (Fla.2001).
[6] The evidence and testimony contained in the record in the instant case confirm the need for this remedial exemption. The trial court took judicial notice that numerous websites exist that display autopsy photographs. The record in the instant case also includes graphic and disturbing autopsy photographs of NASCAR drivers Neil Bonnett and Rodney Orr which were published on Mr. Uribe's website the day before chapter 2001-1 became law. Mr. Bonnett's daughter and Mr. Orr's lather testified about the emotional distress caused by the publication and viewing of the autopsy photographs of their father and son and Mrs. Earnhardt testified concerning the emotional distress that would result from even the potential publication or public viewing of her deceased husband's autopsy photographs.
[7] See Memorial Hospital-West Volusia, Inc. v. News-Journal Corp., 784 So.2d 438 (Fla. 2001); Allen v. Butterworth, 756 So.2d 52, 65 (Fla.2000) ("This Court has recognized that `chapter 119 grants a substantive right to Florida citizens,' on which the Legislature `has the prerogative to place reasonable restrictions.'") (quoting Henderson v. State, 745 So.2d 319, 326 (Fla.1999)); Henderson, 745 So.2d at 328 n. 5 ("In interpreting article I, section 24 of the Florida Constitution, we have stated that `public officials must conduct public business in the open and ... public records must be made available to all members of the public.'") (quoting State ex rel. Clayton v. Board of Regents, 635 So.2d 937, 938 (Fla.1994)); Housing Auth. of City of Daytona Beach v. Gomillion, 639 So.2d 117, 121 (Fla. 5th DCA 1994) ("It is the policy of ... the Florida Public Records Act ... that the records of public bodies should be accessible to the public absent a clear and specific exemption from disclosure.").
[8] As explained by the court in Department of Law Enforcement:

The basic due process guarantee of the Florida Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law." Art. I, § 9, Fla. Const. Substantive due process under the Florida Constitution protects the full panoply of individual rights from unwarranted encroachment by the government....
... Procedural due process under the Florida Constitution
guarantees to every citizen the right to have that course of legal procedure which has been established in our judicial system for the protection and enforcement of private rights.
Department of Law Enforcement, 588 So.2d at 960 (emphasis supplied) (citations omitted) (quoting State ex rel. Gore v. Chillingworth, 126 Fla. 645, 171 So. 649, 654 (1936) (citations omitted)); see also Miller v. Nolte, 453 So.2d 397, 401 (Fla.1984) ("Persons have a right to due process when the protection and enforcement of their private rights are at issue.") (citing Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)).
[9] Mendly v. County of Los Angeles, 23 Cal. App.4th 1193, 28 Cal.Rptr.2d 822 (1994); Van de Kamp v. Gumbiner, 221 Cal.App.3d 1260, 270 Cal.Rptr. 907 (1990); Robinson v. City of Winfield, 114 Kan. 387, 219 P. 273 (1923); Holen v. Minneapolis-St. Paul Metro. Airports Comm'n, 250 Minn. 130, 84 N.W.2d 282 (1957); Yow v. Tishomingo County Sch. Bd., 177 Miss. 821, 172 So. 303 (1937); Becker v. Adams, 37 N.J. 337, 181 A.2d 349 (1962); Bradford v. Suffolk County, 257 A.D. 777, 15 N.Y.S.2d 353 (N.Y.App.Div.1939), judgment affirmed as modified, 283 N.Y. 503, 28 N.E.2d 932 (1940); Jackson County v. Jackson Educ. Serv. Dist., 90 Or.App. 299, 752 P.2d 1224, review denied, 306 Or. 155, 758 P.2d 346 (1988); Inman v. Railroad Comm'n, 478 S.W.2d 124 (Tex.Civ.App.1972); Leuch v. Egelhoff, 260 Wis. 356, 51 N.W.2d 7 (1952).