CANADY, Judge.
The Sarasota Herald-Tribune appeals a final order of the circuit court denying access to certain records of the Florida Department of Children and Family Services (DCF) and of the other appellees. The Herald-Tribune had sought access to records relating to a child abuse case under a statutory provision permitting the disclosure of such records upon a showing of good cause. Because we conclude the circuit court abused its discretion when it failed to conduct an in camera review of the records to which the Herald-Tribune seeks access, we reverse the trial court’s order.
I. BACKGROUND
A. Access to Records in Child Abuse Cases
The custodians of public records are generally required to “permit the record[s] to be inspected and examined by any person desiring to do so.” § 119.07(l)(a), Fla. Stat. (2001). See also art. I, § 24, Fla. Const. Certain records are, however, protected from disclosure. See art. I, § 24(c). Section 39.202(1), Florida Statutes (2001), provides that “[i]n order to protect the rights of the child and the child’s parents or other persons responsible for the child’s welfare, all records held by [DCF] concerning reports of child abandonment, abuse, or neglect ... shall be confidential and exempt from the provisions of s. 119.07(1).” Section 39.202(2)(o) provides, however, that child abuse records other than information identifying the reporter of abuse will be made available to “[a]ny person in the event of the death of a child determined to be a result of abuse, abandonment, or neglect.”
Notwithstanding the exemption from disclosure afforded by section 39.202(1), records in child abuse cases may be made public by court order pursuant to the provisions of section 119.07(7):
(a) Any person or organization, including the Department of Children and Family Services, may petition the court for an order making public the records of the Department of Children and Family Services that pertain to investigations of alleged abuse, neglect, abandonment, or exploitation of a child.... The court shall determine if good cause exists for public access to the records sought or a portion thereof. In making this determination, the court shall balance the best interest of the ... child who is the focus of the investigation, and ... the interest of that child’s siblings, together with the privacy right of other persons identified in the reports against the public interest. The public interest in access to such records is reflected in s. 119.01(1), and includes the need for citizens to know of and adequately evaluate the actions of the Department of Children and Family Services and the court system in providing ... children of this state with the protections enumerated in [s.] 39.001.... However, this subsection does not con *510 travene [s.] 39.202 ..., which protect[s] the name of any person reporting the abuse, neglect, or exploitation of a . child....
[[Image here]]
(c) When the court determines that good cause for public access exists, the court shall direct that the department redact the name of and other identifying information with respect to any person identified in any protective investigation report until such time as the court finds that there is probable cause to believe that the person identified committed an act of alleged abuse, neglect, or abandonment.
(Emphasis added). Section 119.07(7)(b) sets forth provisions — not relevant to the instant case — relating to the release of records “[i]n cases involving serious bodily injury to a child.”
B. The Basis for the Heraldr-Tribune’s Petition
The basic facts of the case are not disputed and have been the subject of articles published by the Herald-Tribune. In August 2002, three children, ages eleven to twelve, who were under the supervision of DCF, were placed with their uncle, Mervin Kitnurse. The children were placed with Kitnurse, a resident of Sarasota County, by Family Continuity Programs, Inc. (Family Continuity), which was under contract with DCF to provide placement and supervision service for children in Pinellas and Pasco Counties. Family Continuity did not conduct a thorough criminal background check concerning Kitnurse before placing the children with him. The check of local records apparently conducted by Family Continuity did not reveal Kit-nurse’s lengthy arrest record, which included charges of lewd and lascivious acts in the presence of children, as well as charges of indecent exposure.
YMCA Children, Youth and Family Services, Inc. (YMCA), which was under contract with DCF to provide services related to foster and adoptive care in Sarasota County, had responsibilities related to the supervision of the three children once they were placed with Kitnurse. Family Counseling Center of Sarasota County, Inc. (Family Counseling), was under contract with YMCA to carry out the actual supervision of the children. Over a period of six months, Family Counseling conducted approximately twelve visits to monitor the children in their placement with Kitnurse. In December 2002, based on concerns regarding the suitability of the placement with Kitnurse, YMCA recommended to Family Continuity that the children be removed from Kitnurse’s home. That recommendation, however, was not followed; the children remained with their uncle.
On March 5, 2003, DCF conducted an investigation of a report that Kitnurse had abused the children in his care. DCF did not perform a criminal background check of Kitnurse, although DCF policy provides for such a check regarding persons accused of abuse. Once again, the children were left with Kitnurse.
On March 13, 2003, a detective with the North Port Police Department went to Kitnurse’s home and spoke with the children. The children told the detective that they were struck daily by Kitnurse. One of the children related that she had been sexually molested by Kitnurse. The same day, the children were removed from Kitnurse’s custody. Kitnurse was subsequently arrested on charges of felony sexual battery and lewd and lascivious molestation of a child under twelve.
C. Proceedings in the Circuit Court
On May 23, 2003, pursuant to section 119.07(7)(a), the Herald-Tribune filed its petition in the circuit court seeking access *511 to records relating to the placement, supervision, and alleged abuse of the three children in the custody of Kitnurse. On June 4, 2003, the circuit court conducted an evidentiary hearing on the Herald-Tribune’s petition. In brief, at the hearing the Herald-Tribune sought to establish good cause for the’ release of the records based on the public need to know how and why it was possible for the series of errors related to the placement of the children with Kitnurse to occur. DCF countered by arguing that the relevant facts concerning the errors involved in the placement with Kitnurse had already been published by the Herald-Tribune and that the release of the records would cause harm to the children involved. The Herald-Tribune contended that the interests of the children could be protected by the redaction of their names from the records. The trial court denied the Herald-Tribune’s petition, stating that “in weighing the public interest to know and the best interest of the children, I just really couldn’t in good conscience require any disclosure of these records.” The Herald-Tribune’s request that the court conduct an in camera review of the requested records was rejected by the trial court.
II. ISSUES ON APPEAL
On appeal, the Herald-Tribune contends that it established good cause for the release of the records and that the appellees did not carry their burden to justify nondisclosure of the records. The Herald-Tribune argues that the statute effectively establishes a presumption in favor of disclosure once a petitioner shows that there is a public interest in access to the records. The Herald-Tribune also asserts that the trial court was required to conduct an in camera inspection of the records at issue. DCF contends that the Herald-Tribune failed to meet its burden of establishing good cause for the release of the records sought in the petition. DCF argues that it was not required to adduce any testimony or evidence to support the nondisclosure of the records. DCF also urges that, in light of the information already made available concerning the errors involved in the placement of the children with Kitnurse, the disclosure of the records requested by the Herald-Tribune is not necessary to vindicate the public interest. Finally, DCF contends that the disclosure would be harmful to the children involved.
The parties are in agreement that on appeal we must determine whether the trial court’s denial of the petition was an abuse of discretion. See Campus Communications, Inc. v. Earnhardt, 821 So.2d 388, 402 (Fla. 5th DCA 2002) (“The standard of review regarding issues of good cause requires us to determine whether the trial court abused its discretion in making its decision.”).
III. ANALYSIS
Under section 119.07(7)(a), a trial court is required to “determine if good cause exists for public access to the records sought or a portion thereof.” The statute provides that the good cause determination is to be based on a balancing of interests. The statute directs that the trial court “shall balance the best interest” of the child involved and the interest of the child’s siblings, as well as “the privacy rights of other persons identified” in the records “against the public interest.” The “public interest in access” is specifically identified as being reflected in section 119.01(1) and as including “the need for citizens to know of and adequately evaluate the actions of [DCF] and the court system in providing ... children of the state with the protections” afforded by law.
*512 Contrary to the argument of the Herald-Tribune, section 119.07(7)(a) does not establish a presumption in favor of disclosure once a public interest in access to the records has been demonstrated. Such a presumption would place the interest of the child in nondisclosure in a position inferior to the public interest in disclosure. Nothing in the text of the statute warrants the imposition of a presumption requiring the trial court to begin the balancing process required by the statute with the scales already tipped against protecting the best interest of the child. When the legislature originally adopted section 119.07(7)(a) it also adopted a specific provision relating to the disclosure of records in cases “involving the death of a child,” which established a “presumption that the best interest of the child and the child’s sibling and the public interest will be served by full public disclosure.” Ch. 90-306, § 24, at 2452, Laws of Fla.; § 119.07(7)(b)(2), Fla. Stat. (Supp.1990). The absence of similar language in section 119.07(7)(a) militates against the argument advanced by the Herald-Tribune that there is a presumption in favor of disclosure under section 119.07(7)(a).
In support of the argument that DCF has the burden of establishing that disclosure should not be made, the Herald-Tribune relies on the principle that the custodian of public records asserting an exemption from disclosure bears the burden of establishing the applicability of the exemption. See Tribune Co. v. Pub. Records, 493 So.2d 480, 484 (Fla. 2d DCA 1986) (stating that where applicability of exemption is disputed, “[ujnless the custodian of the requested records asserts and sustains a specific exemption to disclosure, the information must be made available to the public”). But proceedings pursuant to section 119.07(7)(a) are not subject to the rule governing proceedings to determine the applicability of an exemption from disclosure. A petition is filed pursuant to section 119.07(7)(a) only with respect to records that are admittedly confidential and exempt from disclosure. There is no requirement for the custodian of such records to establish that they should not be released. The petitioner has the burden of showing that good cause exists for the disclosure of the records sought or a portion of those records.
In conducting the balancing of interests necessary to determine whether good cause exists for disclosure, the trial court is required to weigh the potential harm to the child involved in the abuse case against the potential benefit to the public that would result from the public disclosure of the information contained in the records. In addition, in weighing the interests in nondisclosure the court is to consider the interest of the child’s siblings and the “privacy right of other persons identified” in the records. § 119.07(7)(a).
All circumstances relevant in any way to the rights and interests of the child should be considered by the trial court. Nothing in the statutory text suggests that the best interest of the child under this statute should be narrowly construed. The pertinent rights of the child include, but are not limited to, the privacy interests of the child, as well as the child’s interest as a crime victim in the successful prosecution of any crimes against the child.[1] In *513 short, in conducting the balancing required by the statute, the trial court must give full consideration to the impact that public disclosure of the information sought would have on the well-being of the child.
On the other side of the scale, the trial court must place the public interest in having an adequate basis for evaluating the performance of DCF and the court system in carrying out their responsibilities for the protection of children. The public interest in disclosure is based on the underlying public interest in understanding the causes of performance shortcomings — a prerequisite to correcting those shortcomings. The public interest in correcting such shortcomings coincides with the interests of all the children who may suffer as a consequence of failures in the state’s efforts to protect them from abuse. As with the best interest of the child, there is nothing in the statute which suggests that the public interest set forth in the statute should be narrowly construed.
The trial court must weigh the particular interests of the individual child or children involved in the case against the general interests of the public in good public policy. These counterpoised interests admittedly are in an important sense incommensurable. Ultimately, the balancing of interests required by the statute involves the exercise of judicial discretion. See Campus Communications, 821 So.2d at 402.
A discretionary decision will not be reversed “[i]f reasonable men could differ as to the propriety of the action taken by the trial court.” Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). In other words, if a reasonable person could view the trial court’s action as proper, the trial court’s decision must be affirmed. The trial court’s discretionary determination is thus afforded substantial deference. But the exercise of discretion is not unbounded. “The trial court’s discretionary power is subject only to the test of reasonableness, but that test requires a determination of whether there is logic and justification for the result.” Id.
In deciding “whether there is logic and justification for” a trial court’s determination under section 119.07(7)(a), we necessarily focus on the nature of the balancing process provided for in the statute. As we have discussed, that process requires the trial court to weigh the harm to the child against the benefit to the public that would potentially result from the disclosure of the records at issue. Both the potential harm to the child and the potential benefit to the public will depend on the particular information contained in the records. The privacy and other interests of the child can only properly be weighed based on an evaluation of the potential impact that the public disclosure of the particular information contained in the records would have on those interests. Similarly, the weight of the public interest in disclosure will turn on the particular facts that would come to light if the court ordered the disclosure of the records.
The balancing of interests provided for in the statute requires that the trial court evaluate the impact of the disclosure of the records against the' backdrop of the information that is already publicly known. The relative weight of the competing interests will in some cases be affected by the fact that information contained in the records is already known to the public. The fact that information in the records is publicly known will not, *514 however, necessarily—or even ordinarily— be sufficient to vitiate the public interest in disclosure of the public records at issue. Nor will the child’s interest in nondisclosure of the records vanish simply because information contained in the records is already the subject of public knowledge. The trial court must consider the potential impact of the disclosure of any additional information that is not publicly available as well as the potential impact of the confirmation of already-disclosed information that would flow from the release of the records sought by the petition.
In connection with the information that is already publicly available concerning the performance of DCF and the other entities having responsibility for the children who were placed with Kitnurse, we acknowledge that DCF has been forthcoming in accepting responsibility for the failures that are evident in the handling of the underlying case. While that circumstance may be relevant to the trial court’s weighing of the public interest in disclosure, it is not sufficient in itself to defeat a petition under section 119.07(7)(a).
The balancing of interests must also be performed in light of the statutory provision for the disclosure of “a portion” of the records sought. To the extent that the best interest of the child involved— together with the other interests identified in the statute—can adequately be protected by the nondisclosure of parts of the records, that circumstance must be taken into account by the trial court. If any portion of the records—the disclosure of which would further the public interest identified in the statute—can be disclosed without harm to the interests of the child and the other relevant interests, the trial court should order the disclosure of that portion of the records.
We note, however, that the Herald-Tribune’s suggestion that the children involved here can be protected by the redaction of their names from the records is unpersuasive. The painful reality is that the children, whose uncle is Mervin Kit-nurse, are readily identifiable based on their acknowledged familial relationship with Kitnurse. Any protection afforded to their privacy interests by the redaction of their names from the records at issue would be entirely illusory.
Our analysis of the statute leads us to conclude that a trial court can properly exercise its discretion under the statute only if the trial court has considered and evaluated the contents of the records. A good cause determination must be based on an evaluation of the potential impact the disclosure will have on the competing interests of the child and the public. It is impossible to judge the potential impact of the disclosure of information contained in records without knowing what that information is. And, ordinarily, the trial court can know what is in the records at issue only by conducting an in camera review. Accordingly, there can ordinarily be no “logic and justification for the result” embodied in the trial court’s good cause determination if the trial court has not conducted an in camera review of the records at issue. Canakaris, 382 So.2d at 1203. See Dep’t of Health & Rehab. Servs. v. Gainesville Sun Publ’g Co., 582 So.2d 725, 727 (Fla. 1st DCA 1991) (stating, in proceeding pursuant to section 119.07(7)(a), that “the trial court would have no basis on which to find good cause without reviewing the records themselves”); see also Woolling v. Lamar, 764 So.2d 765, 768-69 (Fla. 5th DCA 2000) (holding that where “[n]o record exists for the trial court to reach its conclusion that the records [requested] are exempt under [cjhapter 119 ... [a]n in camera inspection by the lower court is ... required so that the trial court will have a factual basis to decide if the records are exempt” under statutory exemption relating to active criminal investigations); Beck v. Dumas, 709 So.2d 601, 603 (Fla. *515 4th DCA 1998) (“The broad judicial discretion which the trial court enjoys in ruling on discovery matters [related to alleged trade secrets] cannot properly be exercised in a vacuum or on a mere whim. The court needs sufficient insight into the relevant factors which must be weighed before deciding the competing interests of the respective parties”).[2]
Here, the trial court refused to conduct an in camera review of the records at issue. The trial court could do nothing more than speculate about the actual content of those records. It therefore lacked an adequate basis for weighing the competing interests under the statute and for determining that good cause did not exist for the release of the records.
V. CONCLUSION
The trial court’s failure to conduct an in camera review of the records at issue was an abuse of discretion. Accordingly, the trial court’s order denying the Herald-Tribune’s petition is reversed, and the case is remanded for further proceedings consistent with this opinion.
Reversed and remanded.
CASANUEVA, J., and GREEN, OLIVER, SENIOR JUDGE, concur.

. We acknowledge that the records at issue in a proceeding under section 119.07(7)(a) are not necessarily protected from disclosure simply because there is an ongoing criminal investigation concerning acts of abuse against the child. See Sun-Sentinel, Inc. v. Fla. Dep’t of Children & Families, 815 So.2d 793 (Fla. 3d DCA 2002) (holding, in proceeding against DCF for disclosure of records, that exemption for records relating to active criminal intelli *513 gence and investigative information was as a matter of law not applicable). That does not mean, however, that a trial court considering a petition under section 119.07(7)(a) should not consider any potential impact of the requested disclosure on the interests of the child as a crime victim in the successful prosecution of crimes against the child.

. We note that section 119.07(2)(b) makes specific provision for in camera inspections of records with respect to which the custodian has asserted an exemption when the party seeking access to the records challenges the applicability of the exemption. 'Under section 119.07(2)(b), in determining whether the records at issue are exempt from disclosure, for one category of exemption — i.e., active criminal intelligence and investigative information — the trial court has discretion to conduct an in camera inspection. For other specific categories of exemption, the trial court is required to conduct an in camera inspection. For certain other categories no provision is made with respect to in camera inspections. The division of the exemptions into these categories depends on whether examination of the records in a particular category is necessary — or sometimes necessary — to determine the applicability of the asserted exemption. The provisions of section 119.07(2)(b) have no bearing on the question of whether a trial court can properly exercise its discretion in balancing the interests at issue under section 119.07(7)(a) without an in camera review of the records to which access is sought.